# HAMILTON v. MARSHALL
(No. 1572; Dec. 17, 1929; 282 Pac. 1058)

158

The cause was submitted for the plaintiff in error on the brief of *M. A. Kline* of Cheyenne, and *Samuel Corson, Jr.,* of Evanston.

The cause was submitted for defendant in error on the brief of *T. S. Taliaferro, Jr.,* and *Arthur-Lee Taliaferro,* of Rock Springs, Wyoming.

KIMBALL, Justice.

Plaintiff and defendant were opposing candidates for the office of sheriff of Uinta County at the last general election. After the official canvass of the returns, defendant was declared elected, and plaintiff brought a contest. A demurrer to the petition was sustained, and plaintiff declining to plead further, judgment was entered in favor of defendant. Plaintiff brings the case here by proceeding in error alleging that the District Court erred in sustaining the demurrer.

The demurrer was on the ground that the petition did not state facts sufficient to constitute a cause of action. The material facts admitted by the demurrer appear in the following statement.

The defendant, on the returns as canvassed, was elected by a majority of 10. The polls at the election were required to be closed at seven o'clock in the evening. Ch. 29, Laws 1927. The poll in Lyman precinct was kept open until after 9 o'clock in the evening, and 14 electors voted in that precinct after seven o'clock. The petition alleged the number as "fourteen or more," but we think the de-

murrer admitted only that there were fourteen. There were cast in Lyman precinct a total of 301 votes, but only 298 on the office of the sheriff. Of these 298 votes, 55 were for plaintiff and 243 for defendant. It is impossible to distinguish the ballots of the 14 electors who voted after seven o'clock from the other ballots cast in said precinct.

The petition does not charge that defendant had anything to do with the keeping of the poll open, nor with the reception of the fourteen votes, after seven o'clock. Nor does it contain any charge of fraud or wrong motive on the part of the election officials. The poll was probably kept open until 9 o'clock as the result of the mistaken application of an earlier statute that referred to primary elections. There is no claim that the fourteen persons who voted after seven o'clock were not qualified electors of the precinct. It is not alleged that any of them voted for defendant, nor that it is impossible to prove for whom they did vote. It is alleged that the 14 votes, which are characterized as illegal, were enough "to have changed the result of the election." This allegation is inconclusive. Whether or not they did change the result would depend on facts that are not stated. The plaintiff evidently was unwilling to allege and did not expect to prove for which candidate the questioned votes were cast.

If the petition had alleged that the votes cast after seven o'clock changed the result, there would be good authority for holding that even then it failed to state a ground of contest unless it was charged that the poll was kept open as the result of fraud or collusion, or for the purpose of altering, changing or affecting the result of the election, or that the persons who voted after hours were not qualified electors. In re Chagrin Falls, 91 Oh. St. 308, 110 N. E. 491. Other cases do not go so far as the Ohio case in disregarding irregularities in the opening and closing of polls, but we think, when the facts of the vari-

ous cases are examined, it will be found that all are in substantial agreement in holding that such an irregularity does not furnish a ground of contest unless it must be deemed to have affected materially the result. Vansant v. McPherson, 155 Ky. 34, 159 S. W. 630; McComb v. Dutton, 2 W. W. Harr. (Del.) 255, 122 Atl. 81; Williams v. Sherwood, 51 N. D. 520, 200 N. W. 782; Chambers v. Board of Directors, 172 Ia. 340, 154 N. W. 581. The important conflict in the authorities arises from a difference in the views as to when the irregularity should be deemed to have affected the result to the prejudice of the contestant, and the method of determining that question.

The plaintiff contends that the votes received after seven o'clock were illegal because they would not have been cast if the poll had been closed at the proper time. We may assume for the purposes of the case that plaintiff's contention on that point ought to be sustained, though In re Chagrin Falls, supra, is authority to the contrary. But, at least in a case where there was no fraud, and the votes were received without defendant's fault, the plaintiff has the burden of proving, and, of course, should allege, not only that illegal votes were cast, but that enough were cast for defendant to change the result. McCrary on Elections (4th Ed.) Sec. 497; Piatt v. People, 29 Ill. 54, 72; Ex parte Murphy, 7 Cow. (N. Y.) 153; Lehlbach v. Haynes, 54 N. J. L. 77, 23 Atl. 422; Tazwell v. Davis, 64 Ore. 325, 130 Pac. 400; State v. Zanleoni, 97 Vt. 212, 122 Atl. 495, and other cases cited below.

The plaintiff, however, contends that it would have been impossible to prove how the illegal votes were cast, because inquiry on that subject is forbidden by laws providing for secrecy of the ballot. Wyo. Const. Art. VI, Sec. 11; C. S. 1920, Sec. 2631, sub-div. 21. While it may be conceded that these laws protect the voter from being required to tell how he voted, it may be doubted whether they have the effect of preventing inquiry of him on that

subject. It is usually held that the voter, if he so desires, may waive the privilege of secrecy, and tell how he voted. Wigmore on Evidence, Sec. 2214. And it may be that he waives the privilege, or never has it, if he votes without right. Hanson v. Village of Adrian, 126 Minn. 298, 148 N. W. 276. But see, Locust Ward Election, 4 Pa. L. J. 341, 350. We do not deem it necessary for the purposes of this case to decide whether or not the plaintiff was prevented by law from proving for whom the alleged illegal votes were cast. If we concede that he was, we still think his petition failed to state a cause of action.

If, for the reason advanced, it was impossible for plaintiff to prove how the alleged illegal votes affected the result, it, of course, was equally impossible for defendant to make such proof. In such a case, it would seem but logical to hold that the plaintiff, having the burden of proof, must fail. Jaycox v. Varnum, 39 Idaho 78, 226 Pac. 285; Atkinson v. Roosevelt County, 71 Mont. 165, 227 Pac. 811; McDaniels' Case, 3 Pa. L. J. 310, 319.

Other authorities hold that, when it is shown that illegal votes have gone into the ballot box without the fault of either candidate, and it is impossible to tell for whom they were cast, the court may purge the poll of the illegal votes by deducting them from the whole vote of the precinct. As said by Judge McCrary (Sec. 495): "Of course, in the application of this rule such illegal votes would be deducted proportionately from both candidates, according to the entire vote returned for each." People v. Cicott, 16 Mich. 283, 315, 322, 97 Am. Dec. 141; Ellis v. May, 99 Mich. 538, 58 N. W. 483, 25 L. R. A. 325; Moore v. Sharp, 98 Tenn. 491, 41 S. W. 587; Potter v. Robbins, 155 Tenn. 1, 290 S. W. 396; Berg v. Veit, 136 Minn. 443, 162 N. W. 522; Russell v. McDowell, 83 Calif. 70, 23 Pac. 183; Heyfron v. Mahoney, 9 Mont. 497, 24 Pac. 93, 18 Am. St. Rep. 761 (but see Atkinson v. Roosevelt

County, supra) ; Briggs v. Ghrist, 28 S. D. 562, 134 N. W. 321; Flowers v. Kellar, 322 Ill. 265, 153 N. E. 351.

If the above rule for deducting illegal votes be applied to the 14 questioned votes in the case at bar, the calculation would show 2 and major fraction for plaintiff, and 11 and minor fraction for defendant. The fractional vote would have to be disregarded or deducted for plaintiff's total. The defendant's majority of 10, as declared on the official canvass, would not be overcome.

Counsel for plaintiff relies on cases holding that where it cannot be shown for whom illegal votes, sufficient in number to affect the result, were cast, the result is rendered uncertain, and it becomes the duty of the court to reject the poll and either declare the contestant elected or annul the election. The authorities that approve the application of this rule in cases of fraud or flagrant misconduct that has the effect of destroying the integrity of the returns, may be put aside. Other cases, however, seem to approve the rule as applying to all cases where votes that should have been rejected have been received in number sufficient to have changed the result, and the court cannot tell for whom they were cast. Locust Ward Election, 4 Pa. L. J. 341; Clarke v. McCown, 107 S. C. 209, 92 S. E. 479; People v. Hanna, 98 Mich. 515, 57 N. W. 738 (but see Ellis v. May, supra) ; Horning v. Fiscal Court, 187 Ky. 87, 218 S. W. 989. In Paine on Elections, Section 513, it is said: "Where illegal votes have been cast, the true rule is to purge the poll by first proving for whom they were cast, and thus ascertain the real vote; but, if this cannot be done, then to exclude the poll altogether. This is safer than the rule which arbitrarily apportions the fraud among the parties." It may be that this remark was intended to have reference only to cases of fraud. Mr. Paine, however, criticizes the rule for proportional deduction of illegal votes, and apparently thinks it should not be resorted to in any case. His objections to it are set

forth in a note to the above cited section, where, among other things, he says that, "In the total absence of proof tending to show for whom illegal votes, sufficient in number to affect the result, were cast, the duty of the court would seem to be to choose, as wisely as possible, between a disregard of the illegality and a rejection of the entire precinct vote."

We cannot approve of the application in the case at bar of a rule that would require the rejection of the whole vote of Lyman precinct, and result in the annulling of the election or the election of plaintiff. See: Jaycox v. Varnum, supra; Atkinson v. Roosevelt County, supra; Briggs v. Ghrist, supra. If Mr. Paine is right in saying that it is the duty of the court to choose between a disregard of the alleged illegality and a rejection of the poll of the precinct, we think the court must choose the first of these courses, where, as in the case at bar, the election of a county official is in question, and the only misconduct charged is that in one precinct the election officials, acting without wrong motive, kept the poll open too long and received after closing time votes of qualified electors which probably did not affect the result.

If we assume that the facts alleged showed the casting of 14 illegal votes, and that it was impossible to ascertain for whom they were cast, the petition, in our opinion, is defective in failing to show that the plaintiff was prejudiced. Whether this is because of the failure to allege that the illegal votes changed the result, or because the illegality should, under the pleaded facts, be disregarded, or because the deduction of the illegal votes proportionately would not change the result, we need not decide.

The District Court did not err in sustaining the demurrer, and its judgment is affirmed.

*Affirmed.*

BLUME, Ch. J., and RINER, J., concur.