STUART McROBBIE *vs.* REGISTRARS OF VOTERS OF IPSWICH.

SAME *vs.* REGISTRARS OF VOTERS OF IPSWICH & another.

Essex.   February 3, 1948. — March 31, 1948.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Elections.*

To invalidate an election where illegal votes were received and counted, it must be proved that the illegal votes changed the result.

In proceedings in the Superior Court to determine the result of a contested election in a town, where it appeared that certain ballots, issued to absentee voters because of physical disability and received and counted, were illegal under the provisions of § 92 of G. L. (Ter. Ed.) c. 54, as appearing in St. 1945, c. 466, § 4, and § 95 as appearing in

St. 1936, c. 404, § 6, as amended, because the voters had made the necessary affidavits before one of the contesting candidates as a notary public, such voters on their own testimony properly were found to have cast their ballots for that candidate; and such ballots were ordered not to be counted for him.

PETITION, filed in the Superior Court on March 25, 1947, for a writ of mandamus, consolidated and considered by the court with a

BILL IN EQUITY, filed in the same court on April 18, 1947, and afterwards amended.

The consolidated proceeding was heard by *Forte*, J., upon a report by one appointed as both auditor and master, and was reported to this court without decision.

*F. H. Magison*, for the petitioner.

*W. F. Hayes*, Town Counsel, for the Registrars of Voters.

LUMMUS, J. The question in this case is whether one Wallace, or the petitioner McRobbie, was elected a selectman of Ipswich at an election held on March 10, 1947. That question depends upon the effect of certain ballots sent to the town clerk by mail by voters who were not present at the polls to cast their ballots in person. Wallace was declared elected, and the petitioner McRobbie contests the election.

This proceeding began as a petition for a writ of mandamus. Later the petitioner brought a bill in equity for the same cause, and this by decree of the Superior Court was, without objection, "consolidated with and fused in said proceeding at law." *Lumiansky* v. *Tessier*, 213 Mass. 182, 189. *Katauskas* v. *Lonstein*, 266 Mass. 29, 32, 33. In *O'Brien* v. *Election Commissioners of Boston*, 257 Mass. 332, and *Hall* v. *Barton*, 290 Mass. 476, mandamus was employed to determine an election contest over the validity of ballots. By G. L. (Ter. Ed.) c. 54, § 103, a bill in equity may be employed to enjoin the counting of any ballot "which was not cast in accordance" with §§ 86 to 102 of said chapter, which relate to voting by absent voters.

Amendment 76 to the Constitution of Massachusetts, adopted in 1944, provides that "The general court shall have power to provide by law for voting, in the choice of

532   McROBBIE v. REGISTRARS OF VOTERS OF IPSWICH.   [322

any officer to be elected or upon any question submitted at an election, by qualified voters of the commonwealth who, at the time of such an election, are absent from the city or town of which they are inhabitants or are unable by reason of physical disability to cast their votes in person at the polling places." The laws governing voting by absent or disabled voters were made applicable to town elections by G. L. (Ter. Ed.) c. 54, § 103A, as appearing in St. 1937, c. 77, § 1, as most recently amended by St. 1946, c. 118. It is not disputed that those laws were applicable to town elections in Ipswich. Those laws are found in G. L. (Ter. Ed.) c. 54, §§ 86–103A, as amended. By § 92, as appearing in St. 1945, c. 466, § 4, a voter who has received an official ballot and is not to be personally present at the polls "shall mark said ballot in the presence of an official authorized by law to administer oaths," and, after enclosing the ballot in an envelope for mailing to the town clerk, shall "execute before said official the necessary affidavit on said envelope," showing his right to cast such a ballot. It is provided by that section that "Any ballot which was applied for by a voter because he would be unable by reason of physical disability to cast his vote in person at the polling place at an election shall be defective if the official in whose presence it was marked and before whom the affidavit required was executed is a candidate for office at such election." By § 95, as appearing in St. 1936, c. 404, § 6, as amended by St. 1945, c. 466, § 5, an envelope which bears "an affidavit executed in violation of section ninety-two before an official who is a candidate for election at the election," is not to be opened so as to reveal the ballot but is to be marked "Rejected as defective." Evidently the law contemplates that an unlawful affidavit before a candidate shall prevent the counting of the ballot contained in the envelope upon which the unlawful affidavit appears.

The same person was appointed auditor and master in the case as consolidated, and filed a single report as such, which was confirmed, and the judge found "such findings of fact as appear in the report of the auditor." The confirmation of the report impliedly overruled all exceptions to

it. *Fuller* v. *Fuller*, 228 Mass. 441, 443. *Simpson* v. *Bright*, 257 Mass. 309, 330. *Untersee* v. *Untersee*, 293 Mass. 132, 135. *De Angelis* v. *Palladino*, 318 Mass. 251, 255, 256. Neither party contends that the report ought not to have been confirmed. The case comes here upon a report by the judge, without decision. G. L. (Ter. Ed.) c. 214, § 30; c. 231, § 111.

The report of the auditor and master shows the following facts. After the balloting was finished, the ballots were counted, and the original count showed one thousand two hundred eighty-five for McRobbie and one thousand two hundred ninety-two for Wallace. On a recount by the respondent registrars of voters on March 16, 1947, McRobbie and Wallace each lost a vote. There were sixty-six ballots sent in by mail under the absent voting law. Of these, forty-six voted for Wallace and twenty for McRobbie. Thirteen ballots were issued because of the physical disability of the voter. These were given to Wallace, and by him given to the voters. In each of these thirteen cases Wallace acted as notary public in the making of the required affidavit. For that reason, these ballots were invalid, and should not have been counted. But it is not enough to invalidate an election, that illegal votes were received. There must be proof that the reception of the illegal votes changed the result. *First Parish in Sudbury* v. *Stearns*, 21 Pick. 148, 154. *Trustees of School District Number Three in Blandford* v. *Gibbs*, 2 Cush. 39, 45.

The only evidence as to the candidate for whom illegal votes were cast in a number sufficient to affect the result of the election was the testimony of some of the voters themselves. The auditor and master recounted the ballots, and found one thousand two hundred eighty-seven for McRobbie and one thousand two hundred ninety-one for Wallace. We have been referred to no case in this Commonwealth, and have found none, which deals with the right or duty of voters to testify for whom they voted. But in other jurisdictions the great weight of authority supports the following propositions. A voter has a privilege not to testify for whom he voted, but may waive that privilege. A voter

casting an illegal ballot has no such privilege. [1] In this case four voters casting illegal ballots refused to testify for whom they voted, and were not compelled to testify. The decisive point is that six others, though warned by the auditor and master that they had a privilege not to testify, voluntarily testified that they voted for Wallace, as they did in fact. As a result, the ballots properly counted for Wallace were reduced to one thousand two hundred eighty-five, making the petitioner McRobbie the victor by two votes.

A final decree is to be entered, declaring the petitioner McRobbie duly elected, enjoining the respondent board not to count in favor of Wallace the six ballots cast in his favor by the six voters whose ballots were enclosed in envelopes upon which the affidavit was made before him as a notary public, and enjoining the respondent board to amend their certificate of election so as to show that the petitioner McRobbie was duly elected selectman of Ipswich.

*So ordered.*

---

[1] *Black* v. *Pate*, 130 Ala. 514. *Dennis* v. *Chilton County*, 192 Ala. 146. *Robinson* v. *McAbee*, 64 Cal. App. 709. *People* v. *Turpin*, 49 Colo. 234, 243. *Eggers* v. *Fox*, 177 Ill. 185. *Sorenson* v. *Sorenson*, 189 Ill. 179, 183. *Buckingham* v. *Angell*, 238 Ill. 564. *Stevenson* v. *Baker*, 347 Ill. 304. *State* v. *Lockwood*, 181 Iowa, 1238. *Powers* v. *Harten*, 183 Iowa, 764. *Glenn* v. *Gnau*, 251 Ky. 3, 90 A. L. R. 1355, and note. *Hogg* v. *Caudill*, 254 Ky. 409. *Little* v. *Alexander*, 258 Ky. 419. *Gaiennie* v. *Druilhet*, 143 La. 662. *Gardner* v. *Board of School District No. 6, Township of Leoni*, 248 Mich. 134. *Hanson* v. *Adrian*, 126 Minn. 298. *Trahan* v. *Simmons*, 191 Miss. 353. *Lane* v. *Bailey*, 29 Mont. 548, 561. *People* v. *Wintermute*, 122 App. Div. (N. Y.) 349. *Torkelson* v. *Byrne*, 68 N. D. 13. *State* v. *Kraft*, 18 Ore. 550. *Horton* v. *Sullivan*, 35 R. I. 242. *Ex parte Henry*, 132 Texas, 575. *State* v. *Hilmantel*, 23 Wis. 422. Wigmore, Evidence (3d ed. 1940) § 2214. 18 Am. Jur., Elections, § 308. 29 C. J. S., Elections, § 281.