BROWN *v.* STATE EX REL. STACK

[No. 28,463. Filed March 31, 1949.]

184

Starr, C. J., and Jasper, J., not participating.

*E. J. Wiltrout, David P. Stanton, Kenneth C. Raub,* all of Gary, for appellant.

*Samuel S. Dubin,* of Gary, for appellee.

EMMERT, J.—This is an appeal from a judgment entered on a special finding of facts and conclusions of law in a quo warranto proceedings adjudging that the appellee, relator Harold Stack, was the duly elected member of the common council for the first councilmanic district of the City of Gary, Indiana, by the election held on the 4th day of November, 1947, for the term beginning January 1, 1948. The errors relied

upon for reversal are: (1) the court erred in overruling appellant's motion for new trial; and (2) the court erred in each of its conclusions of law, 1 to 13, inclusive. No cross-errors are assigned on this appeal.

The evidence introduced consisted of a stipulation, the testimony of the clerk of the Lake Circuit Court, and the applications, envelopes, and ballots of twenty-six absent voters for the first councilmanic district of the City of Gary, which district contained precincts numbered 1 to 15, inclusive.

According to the count of the precinct election boards, which was certified by the county canvassing board, the relator Stack received 2,979 votes registered on voting machines, plus 15 absentee ballots; and the appellant, Albert W. Brown, received 2,983 votes registered on the voting machines, plus 8 absentee ballot votes.

On November 14, 1947, the clerk of the Lake Circuit Court issued a certificate of election to said Harold Stack, relator. Thereafter the appellant Brown filed a petition for a recount of all the votes cast in the 15 precincts. The recount commission after a recount certified that the appellant Brown received 2,987 votes and the relator Stack received 2,984 votes, and thereafter, pursuant to said recount certification, on December 10, 1947, the clerk of the Lake Circuit Court issued and delivered to appellant Brown a certificate of his election as councilman for said ward.

On December 17, 1947, relator Stack commenced his quo warranto action to determine the title to the office. By conclusion of law No. 11 the trial court stated that relator Harold Stack received at such election 2,992 valid legal votes and the appellant Brown received 2,991 valid legal votes "and that by reason thereof the said Harold Stack receives the highest number of legal votes at such election."

The action of quo warranto was not abolished by the provisions of the statute for a recount, but the two remedies are concurrent. *State ex rel. Watson* v. *Pigg* (1943), 221 Ind. 23, 46 N. E. 2d 232; *State ex rel. Nicely* v. *Wildey* (1935), 209 Ind. 1, 197 N. E. 844. The original absentee voters' applications, ballots and envelopes are properly in the bill of exceptions. *Tombaugh* v. *Grogg* (1901), 156 Ind. 355, 59 N. E. 1060. "The original ballots are in the record. Upon such a record it is within the jurisdiction of this court to weigh the evidence and direct such a judgment or decree as may be proper. Section 723, Burns 1926; *State ex rel. Davis* v. *Board, etc.,* (1905), 165 Ind. 262, 74 N. E. 1091." *Lumm* v. *Simpson* (1935), 207 Ind. 680, 684, 194 N. E. 341.

There were only three absent voters' ballots cast in precinct No. 4, all of them being for the relator Harold Stack. Two of these absentees failed to verify their applications for absentee ballots before some officer authorized to administer oaths and having a seal. The trial court counted each of these ballots for relator Stack, and the appellant insists that two of these three ballots cast in the fourth precinct should not have been counted, since they were based upon invalid applications.

The statutory provisions clearly indicate a legislalative intention that the verification requirements were more than a mere formality. Section 29-4903, Burns' 1933 (1947 Supp.), (Acts of 1945, ch. 208, § 196, p. 680; Acts of 1947, ch. 120, § 24, p. 364), which is § 196 of the Election Code, provides the application "shall be signed and sworn to by the applicant, as hereafter provided, before some officer authorized by law to administer oaths and having an official seal." The form which follows, under the line for the

signature of the applicant, contains a verification clause. Section 29-4907, Burns' 1933 (1947 Supp.), requires that the county election board shall "cause to be mailed to all applicants who have executed and filed their application," official absentee ballots. When the absentee ballots have been voted and returned to the county election board in the prescribed envelopes the county election board is required to examine the signature on each envelope and compare it with the signature of the voter as it "appears and is written upon the application for such absent voter's ballot or ballots on file as herein provided." If the county election board is of the unanimous opinion that the signature of the voter is not genuine, the envelope is rejected and the ballots not voted, but if the board fails unanimously to find the signature is not genuine, the envelope and ballots therein together with the application are transmitted to the precinct election board which "shall then determine whether said ballot or ballots shall be voted or rejected." Before any absent voter's ballot envelope is opened, the inspector must compare the signature on the envelope with the signature on the application. Section 29-4914, Burns' 1933 (1947 Supp.). If the signature is not genuine the ballot is not accepted or counted and the ballot is then endorsed on the back thereof "Rejected" for the reason stated therefor, and all rejected ballots are preserved "in the same manner as by law provided for the return and preservation of official ballots cast and uncast at the election."

In the event any absent voter's ballot be challenged, "the application of said absent voter for an absent voter's ballot made in accordance with the provisions of this article [§§ 29-4901 to 29-4946] shall be taken and considered as the affidavit in writing required to

be made by a voter, when challenged at the polls when voting in person . . . ." Section 29-4915, Burns' 1933 (1947 Supp.).

The failure on the part of the applicants to verify their applications was not due to any default, neglect or fraud on the part of any of the election officials, so the facts do not fall within the rule that failure of an election official to execute a directory requirement of the law shall not cause a voter to have his ballot rejected. In *Werber* v. *Hughes* (1925), 196 Ind. 542, 148 N. E. 149, this court clearly recognized the distinction between such cases, when it held that the failure of the clerk of the circuit court to place upon the absent voter's ballot his official seal invalidated the ballot, while on the other hand the failure of the poll clerk to initial the ballot after it had been received by the precinct board and before being deposited in the ballot box, was an irregularity which did not void the ballot. The provisions requiring the verification of the application were intended to safeguard the purity of elections and were conditions precedent to lawfully obtaining absent voters' ballots.

The reasoning of the Supreme Court of Minnesota in holding similar provisions concerning the application for an absent voter's ballot mandatory is very persuasive for the construction we have adopted. ". . . The Absent Voters Law provides a way for voting by mail in cases in which the voters are absent from the district or are physically unable to go to the polls in person. The lawmaking power, being fully cognizant of the possibilities of illegal voting, frauds and dishonesty in elections, prescribed many safeguards in the Absent Voters Law to prevent such abuses. While the purpose of the statute is to extend the privilege of voting, its provisions clearly indicate an intention not to let down

the bars necessary for honest elections. Absentee voting is an exception to the general rule and is in the nature of a special right or privilege which enables the absentee voter to exercise his right to vote in a manner not enjoyed by voters generally. By the terms of the statute, it is purely optional with the absentee voters whether they shall exercise the rights and privileges conferred upon them. If an elector decides to exercise the privilege of absentee voting, he can register and vote, by the terms of the law, only 'by complying with the provisions' thereof. Section 496. And the act intends that the judges of election shall not receive his ballot if there is noncompliance therewith. Section 504. The statute prescribes a condition precedent to absentee voting by requiring the making of an affidavit, returned to the city clerk, and the subscribing and swearing to the oath required by section 497. The verified application contains statements of facts showing the applicant's qualifications as a voter and his right to a ballot. The application is required to be filed and the ballots are to be delivered to the voter direct by mail or in person by the clerk. The obligation to comply with these provisions is in mandatory language, and is imposed upon the voters . . ." *Wichelmann* v. *City of Glencoe* (1937), 200 Minn. 62, 65, 66, 273 N. W. 638, 639, 640.

Similar provisions under an Illinois absent voters law requiring a verified application and the comparison of the signatures on the application with the signatures on the ballot envelopes have been held mandatory. In *Talbott* v. *Thompson*, (1932), 350 Ill. 86, 99, 182 N. E. 784, 790, the court said:

"Ellen Rosenberger obtained an absent voter's ballot upon an application which she did not sign. Section 9 of the act requires the judges of election

to compare the signature on the application with the signature to the affidavit on the ballot envelope. The judges must find, among other things, that these signatures correspond before the ballot may be deposited in the ballot box. The voter made it impossible for the judges to perform this essential duty, and her ballot, counted for the appellee, should have been rejected."

The Supreme Court of Mississippi also held the statutory provisions of that state requiring the verified application for an absent voter's ballot were mandatory. In *Guice* v. *McGehee* (1929), 155 Miss. 858, 870, 871, 124 So. 643, 646, 647, that court reasoned:

"After a careful consideration of the language and purpose of the statute, the conclusion is inescapable, we think, that the Legislature, in adopting the act, looked upon it as an exception to, or an innovation on, a long-established public policy of this state, as evidenced in our registration and election laws, which had been in force for over 30 years. By the statute, the absent voter was favored. He was granted a privilege which had never theretofore existed in this state. The statute, in its every section, is couched in terms most mandatory, and concludes by denouncing as a misdemeanor the failure of any election officer to perform the duty required of him under the statute, and as a felony on the part of the elector to make a false affidavit to his application for his absent voter ballot. The Legislature evidently had in mind that absent voting would be conducive to fraudulent voting, and undertook, in a most explicit and mandatory manner, to provide against fraud.

"We hold that the statute must be construed as mandatory in all of its substantial requirements; and therefore an exception to the general rule that election laws are construed liberally in favor of the electors."

There is no merit to the appellee's contention that the secrecy of the ballot prevents a review of the error

in counting these two absent voters' ballots for the appellee, relator. This is not a case where one party seeks to compel an absentee voter to disclose for whom he voted. See *McArtor* v. *State ex rel. Lewis* (1925), 196 Ind. 460, 148 N. E. 477. Any voter who wishes to avail himself of the right to vote by absent voter's ballot must be held to have waived some of the provisions for secrecy available to him if he voted in person at the polls. Each absent voter's ballot must contain on the back thereof the signature of the clerk and his official seal, which thus identifies the ballot as an absent voter's ballot when the same is counted. Quite often there are very few absent voter's ballots cast in many precincts. It is easily possible that all the absent voter's ballots should be cast for the same candidate or candidates, and so the matter becomes one of public record when such votes are counted on the tally sheets. Under such circumstances there are no considerations of secrecy which prevent the court in quo warranto proceedings from ascertaining for whom the illegal ballots were cast, and so being in a position to correct the error. Two of the absent votes cast for the relator Stack should not have been counted in precinct No. 4.

The trial court found that two absent voters' ballots in the 14th precinct, which were the only absent voters' ballots cast therein, should both be counted. The evidence discloses that one of these ballots was contained in an envelope which was signed by the voter, but unverified, and failed to have the certificate of the proper officer as required by § 29-4908, Burns' 1933 (1947 Supp.). This clearly violated a mandatory provision of the statute and this vote for the relator Stack should not have been counted. See *Torkelson* v. *Byrne* (1937), 68 N. D. 13, 276 N. W. 134, 113 A. L. R. 1213; 29 C. J. § 210, pp. 301, 302.

In the 11th precinct there were only two absent voters' ballots, both of them being cast for the relator Stack. Relator's exhibit No. 39 recites that the ▆▆▆ applicant was a housewife and she would be absent for the following reason—"vacation." Section 29-4901, Burns' 1933 (1947 Supp.), does not permit an absent vote to be cast by a person away on vacation. This ballot should not have been counted. The appellant contends the remaining absent voter's ballot should not have been counted for the reason that the verified application discloses the following statement: "That I am housewife (stating business) and that because of the nature of my business or employment or for the following reason business (relating unavoidable cause of absence), I expect to be absent from the county of my residence . . ." From an examination of the original contained in the bill of exceptions it appears that the word "vacation" had been written before the written word "business" and then stricken out in ink. The word "housewife" in Webster's New International Dictionary (2d Ed.) is defined as, "A mistress of a family, the female head of a household." Under this definition a housewife could be engaged in gainful employment or business, depending upon the particular facts of her being a housewife. If she were merely the housewife for her husband and family this would not constitute gainful employment or business within the meaning of § 29-4901, Burns' 1933 (1947 Supp.). See *Perry* v. *John Hancock Life Ins. Co.* (1906), 143 Mich. 290, 106 N. W. 860, 861. However, the appellant has not called our attention to any evidence in the record which indicates the trial court erred in holding this remaining vote valid, and therefore we cannot say it was error to count this vote.

It is not necessary to consider other alleged errors. The special finding of facts and conclusions of law of the trial court should be corrected to show that the appellant Albert W. Brown received a total number of 2,991 votes and that the relator, appellee Harold Stack, received a total number of 2,988 votes, and that therefore the appellant was duly elected as a member of the common council of the City of Gary for the first councilmanic district.

Judgment reversed with instructions to the trial court to restate its findings and conclusions in conformity with this opinion and to render judgment thereon accordingly.

Starr, C. J. and Jasper, J. not participating.

NOTE.—Reported in 84 N. E. 2d 883.