Claude FUGATE, Orange Taylor, O. C. Laurence, S. H. Patterson, and Henry Laurie, Appellants (Plaintiffs below),

v.

MAYOR AND CITY COUNCIL OF TOWN OF City of BUFFALO, Wyoming, a municipal corporation, Appellees (Defendants below).

No. 2930.

Supreme Court of Wyoming.

Dec. 22, 1959.

Addendum Jan. 12, 1960.

---

William C. Holland, Buffalo, and Ernest Wilkerson, Casper, for appellants.

Burton S. Hill, Robert A. Hill and William J. Kirven, Buffalo, for appellees.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Chief Justice BLUME delivered the opinion of the court.

This case involves an appeal from a summary judgment in an action in which the validity of a bond election in the Town of Buffalo was attacked, the summary judgment holding that the majority of the electors voted in favor of the issuance of the bonds.

The Mayor and Council of the Town of Buffalo, Wyoming, submitted to the voters of the town at a special election held August 19, 1958, the question as to whether or not bonds of the town should be issued in the sum of $180,000 for the purpose of constructing improvements and making extensions of the waterworks system of the town. The election was held on the same day on which a primary election was held. When the votes were canvassed it was found that on the face of the returns nonproperty owners voted in favor of the bonds by a vote of 158 to 90 and that property owners voted in favor of the bonds by a vote of 471 to 452, making a majority of nineteen of the property owners of the town. No question is raised herein as to the vote of the non-property owners and that matter will not again be mentioned.

On September 20, 1958, plaintiffs Claude Fugate, Orange Taylor, O. C. Laurence, S. H. Patterson and Henry Laurie, citizens and taxpayers of the Town of Buffalo, filed a complaint alleging in substance that illegal votes were cast in the election. Specifically, it was alleged that some twenty illegal ballots, including nineteen absentee ballots, were cast in favor of the bonds sufficient to change the result of the election; that in some cases ballots which were cast were not counted by the judges of election but only by the clerks of election after the judges had left; and that the persons casting absentee ballots did not make the proper affidavit required by the statutes. An answer was filed by the defendants and appellees herein, substantially denying the allegations of the plaintiffs except the formal parts thereof. Pursuant to a motion, three impartial persons were appointed as masters to examine the various ballots cast in the election and to make a report of their findings to the court. That report was made and filed on February 24, 1959, but no arguments are made in connection with it in the briefs of counsel, nor is a claim made thereunder, so we find it unnecessary to set it out. After a pretrial conference had been held, the parties herein entered into a stipulation of facts, which in substance is as follows:

1. The report of the masters aforementioned may be introduced in evidence subject, however, to the right of either party to submit further evidence tending to amplify, correct or contradict the statistics, allegations, statements or conclusions contained therein. It is not contended herein that this report would have been introduced in evidence if opportunity to do so had been afforded.

2. Four persons, namely Mrs. Etta Burt, Lawrence and Ruth Neyer and Don Christensen, voted as property owners of the town when as a matter of fact they were not at that time property owners. The names of five persons did not appear on the assessment rolls of the town but each of them or their spouses were the owners of real property in the Town of Buffalo at the time of the election. Three persons were the vendees under a recorded contract for a warranty deed and the property covered by such contract was assessed in the names of the vendors and

the vendees. The names of two persons did not appear on the assessment rolls, but this was due to a marriage, the property having been assessed under the wife's former name.

3. Nineteen absentee ballots of so-called property owners were voted and cast in the aforesaid election.

a. "In each instance the affidavit form bears the signature of the elector offering to vote as an absentee voter. In each instance they were signed in the presence of Carl Kaltenbach, City Clerk of Buffalo, Wyoming, but not attested to by him. On Election Day, twelve of these affidavits were attested to by an election official in the absentee voters' respective precincts, but not in the presence of the affiant, and seven were not attested to by anyone."

b. Seven absentee votes cast in Precinct 4 were not "examined and cast by the regular election judges between the opening and closing of the polls on the election day in question but such ballots were opened, cast, and counted by the counting clerks after the polls had been closed, and after the regular election judges had left the polling place."

4. In Precinct 4 the election judges and clerks failed to keep a separate poll book for the special bond election but entered the names of the voters on the primary poll book instead of the regular poll book furnished by the city.

5. In Precincts 3 and 4 no notations were made on the poll lists as to which voter voted by absentee ballot.

6. "If called upon to testify to the fact, the City Clerk, Carl Kaltenbach, would testify that he did make, furnish and file a list of absentee voters for Precinct No. 3."

On the same day on which the agreed statement of facts was entered into, namely on May 4, 1959, the defendants and appellees herein filed a motion for a summary judgment reading as follows:

"Comes Now the defendants, by their attorneys, Burton S. Hill, William J. Kirven and Robert A. Hill, and move the Court for Summary Judgment in the above entitled action, upon the grounds and for the following reasons, to-wit:

"1. That under and by virtue of the Agreed Statements of Fact and Stipulation filed herewith, there is no genuine issue as to material facts which supports plaintiffs' claim.

"2. That the witnesses of the plaintiffs, being certain electors in said Special Water Bond Election of the City of Buffalo, Wyoming, held August 19, 1958, would be prevented from rendering testimony as to how they voted at said election, by reason of their Constitutional Immunity therefrom, and the Hearsay Rule of Evidence."

Thereupon the court rendered the following judgment:

"This matter came on regularly for consideration by the Court May 5, 1959, upon defendants' Motion for Summary Judgment.

"And the Court having read and considered said motion, and reviewed the pleadings filed herein, and having read and considered the briefs of the plaintiffs and defendants, and heard their arguments, finds generally in support of said Motion.

"It Is Therefore Hereby Ordered, Adjudged and Decreed, that defendants' Motion for Summary Judgment in the above entitled action be, and the same hereby is, sustained, and summary judgment granted.

"Done in Open Court this 11th day of May, 1959."

On June 10, 1959, the plaintiffs and appellants filed their Notice of Appeal and filed a statement of the points on which they intended to rely on appeal as follows:

"1. That absentee ballots were accepted and cast by the election officials in the municipal bond election in question and that such voting of absentee ballots in such a bond election is illegal and contrary to the provisions of the statutes.

"2. That even if such absentee votes were permissible in such an election that the 19 persons casting such absentee votes did so illegally for the reason that the purported affidavits of the property owner's casting such absentee ballots were invalid due to the fact that the affidavit forms were either not attested by any official or were improperly and unlawfully completed and purportedly attested by election officials on the day of election and not in the presence of the person signing the affidavit form, and that furthermore such purported affidavits were not attested in compliance with the ordinance proclaiming said election.

"3. That said election is illegal for the reason that the election officials in Precinct 4, Northeast Buffalo, did not keep a separate poll book for the special bond election showing the names of the voters and the numbering thereof as required by statute.

"4. That the seven absentee votes of property owners cast in Precinct 4, Northeast Buffalo, were illegally cast after the closing of the polls.

"5. That twelve persons illegally cast votes as property owners when they were not the owners or the spouses of owners of real or personal property assessed on the assessment rolls.

"6. That a combination of the votes which were illegally cast by absentee voters and by non-property owners voting property owner ballots was sufficient to change the result of said election.

"7. That the summary judgment entered in said cause was premature and not justified by the facts as disclosed by the record and that said cause should have been permitted to go to trial and that evidence should have been received in order to fully show the facts pertaining to the illegal aspects of said election as above specified and to show the manner in which said illegal voters cast their votes."

1. At the pretrial conference the court announced the following conclusion of law:

"That duly qualified electors may vote at municipal bond elections, such as in the instant case, by absentee ballot, subject to the requirements of the law with respect to absent voters."

Counsel for appellees contend that appellants should have voiced an exception or an objection and in the absence thereof the holding of the court was binding. However, they cite no authority and we have found none to support the contention. The action of the court appears to be somewhat like an attempt to limit the issues in the case. In the case of Fowler v. Crown-Zellerbach Corporation, 9 Cir., 163 F.2d 773, the court held that a party may not object for the first time on appeal to a pretrial order limiting the issues if the order was made with the consent of the parties. Such consent does not appear in the case at bar. Moreover, we shall not base this decision upon the question as to whether or not qualified electors may vote by absentee ballot in municipal bond elections but shall base our decision upon the fact that the absentee voters did not comply with the requirements of the statute as hereafter noted. The trial court made no specific finding on that point in the ruling above quoted. Furthermore, the public has an interest in the result of an election contest, and it may be doubtful that appellants could waive any vital point involved in the case by making no objection at the pretrial conference. See Johnson v. Russell, 161 Kan. 203, 166 P.2d 568.

2. Summary Judgment.

■■ The appellees contend herein that appellants cannot now object to the summary judgment that was entered herein. They state as follows:

"However, when a motion for summary judgment has been filed, as in this case, adverse parties may not rest upon the allegations of their pleading. They must respond by affidavits, or otherwise as provided by the rules, showing that there is a genuine issue for trial.

Since no such response was made, we believe summary judgment was appropriate and proper against appellants."

Counsel for appellees cite us to Rule 56(e), Wyoming Rules of Civil Procedure, and cases that have been decided under that rule. They have misconceived the law on this subject. In order to warrant the entry of a summary judgment, it must appear that the moving party is entitled to a judgment as a matter of law. Rule 56(c), Wyoming Rules of Civil Procedure. Under certain circumstances—some illustrations of which are given in 3 Barron and Holtzoff, Federal Practice and Procedure, 1958, § 1231, p. 97—affidavits may be used in order to determine as to whether the requirement of Rule 56(c) is met. Rule 56(e) provides for *supporting* and *opposing* affidavits and then provides:

"* * * When a motion for summary judgment is made and *supported as provided in this rule,* an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. * * *" (Emphasis supplied.)

In the case at bar, there were no supporting affidavits on behalf of the movant for a summary judgment and, hence, Rule 56(e) has no application in the case. In fact, we have not been able to conjure up any facts, in addition to those set forth in the agreed statement of facts, which appellees could have set up in an affidavit so as to make Rule 56(e) applicable herein. In Geller v. Transamerica Corporation, D.C.Del., 53 F.Supp. 625, affirmed 3 Cir., 151 F.2d 534; Winrod v. McFadden Publications, Inc., D.C.Ill., 62 F.Supp. 249; Engl v. Aetna Life Ins. Co., 2 Cir., 139 F.2d 469; and Hartmann v. Time, Inc., D.C.Pa., 64 F.Supp. 671 (vacated in part and set aside, 3 Cir., 166 F.2d 127, certiorari denied 334 U.S. 838, 68 S.Ct. 1495, 92 L.Ed. 1763, 1 A.L.R.2d 370), cited by counsel for appellees herein, there were supporting affidavits filed by the movants for summary judg-

ments and no counter affidavits or not sufficient counter affidavits were filed by the opposing parties.

Counsel for appellees say that the court should be permitted to base its findings on the agreed statement of facts upon which appellees relied in view of the fact that appellants made no objection. It may be conceded, insofar as we can gather from the argument of counsel for the appellants, that the agreed statement of facts presents substantially all the vital facts in the case and that at that stage of the case there was presented to the court purely a question of law, and further proceedings in the case, if any, depended upon what legal conclusions were arrived at by the court. It is said in 3 Barron and Holtzoff, Federal Practice and Procedure, 1958, § 1234, pp. 126–128, as follows:

"Summary judgment is proper where there is a question of law but no issue of fact. Grant of the motion is not precluded because the question of law is important, difficult or complicated. It is for the court to decide whether further development of the facts and surrounding circumstances will assist it in making a correct determination of the question of law. Normally where the only conflict is as to what legal conclusions should be drawn from the undisputed facts, a summary judgment should be entered. * * *"

The objection herein is not as to the form of judgment entered by the trial court but that it arrived at the wrong legal conclusion under the facts herein. We might say incidentally, so as not to leave a wrong impression as to the value of the rule relating to summary judgments in a case like that at bar, that when there is an agreed statement of facts and a motion for summary judgment is interposed, the situation presented does not materially differ from one in which a case is submitted to a trial court upon an agreed statement of facts and judgment is rendered thereon. It is doubtful that in such case a summary judgment speeds up the disposition of the controversy to any great extent, if any. In either case

the court may take the matter under advisement for a short or a long time. And in either case the ultimate question is as to whether or not the judgment rendered is warranted by the facts, that is to say, whether the court applied a proper or improper rule of law. So we shall proceed to consider as to whether or not the court should have overruled the motion for summary judgment. If its conclusion of law under the facts herein was wrong, that is to say, if the court should have denied the motion for a summary judgment, then facts would be left to be determined as hereinafter noted. That the court was wrong in entering a summary judgment herein will become clear as we proceed.

3. It appears herein that four persons who voted the property ballot were not in fact owners of property in the Town of Buffalo, and, hence, their votes were illegal. It is also contended by the appellants that three persons who had contracts for deed were also illegal voters. However, we may presume, according to the usual custom in business, that they had invested money in the property which they bought. They had an interest in the property and were, accordingly, at least part owners thereof. In view of the fact that the right to vote should be construed liberally, as courts generally hold, we are inclined to believe that these persons should be held to have been legal voters. The statute hereafter cited does not say that the property must be assessed in the name of the person who votes, but that the person who votes must be the owner of property which is assessed on the assessment rolls. For instance, property may be assessed in the name of one person in the early part of the year, but may be owned by another at the time of the bond election. The latter should be permitted to vote. So we think that the persons who were actually owners of property at the time of the election according to the agreed statement of facts should be considered to be legal voters. It is further contended that nineteen absentee voters cast their votes illegally. It would seem, accordingly, that if that

contention is correct, the total number of illegal votes which were cast in the election was twenty-three. Seven of these absentee votes were not counted by the judges of election but only by the clerks after the judges of election had left, and it seems to be conceded that these seven absentee voters cast illegal ballots. Even if we should deduct all these illegal ballots, namely those of four persons who were not entitled to vote the property ballots and those of the seven above mentioned, from 471 that would not change the result of the election. So the remaining question is as to whether or not the twelve remaining absentee voters (19 less 7) were legal voters. The trial court held that they were. That presents the nub of this case. Counsel for the appellants, abandoning other contentions, seem to correctly state the issue herein when they say in their brief as follows:

"* * * If, in fact, this court determines that absentee ballots may be cast in a municipal bond election, and if this court is further prepared to validate those absentee ballots which were not executed and cast in accordance with the statutory requirements, then the appellants must fail and the Supreme Court declare the election results among the property owners to have been in favor of the issue. On the other hand, if this court determines that absentee ballots may not be cast in a municipal bond election, or, assuming they may be cast, if the court determines that they nonetheless must be cast within the framework of the statutory requirements, then what should this court do with this issue? It is submitted that the matter then must be returned to the trial court for a determination of the factual issues involved."

Turning then to the statutes of this state, we find that it is provided by § 22–131, W.S. 1957, that the question as to whether or not bonds should be issued is submitted to property owners and to non-property owners. The next section, § 22–132, W.S.1957, provides that separate ballot boxes shall

be provided, namely ballot box "A" in which are deposited white ballots cast by non-property owners and ballot box "B" in which are deposited colored ballots cast by property owners.

Section 22–133, W.S.1957, provides as follows:

"Every citizen of the United States of the age of 21 years and upwards who has resided in the state one year and in the municipality 60 days next preceding such election and who has complied with the registration laws in the event that prior registration is required at such election, shall be entitled to vote thereat. If such elector is not the owner of or the spouse of the owner of real or personal property assessed on the assessment roll of any county of the state, in the case of a state bond election, or on the assessment roll of the municipality in the case of a municipal bond election, he shall be furnished by the officers conducting such election a ballot printed on white paper, and the ballots of all such persons shall be deposited in ballot box 'A.' If such elector is the owner of or the spouse of the owner of real or personal property assessed on the assessment roll of one or more of the counties of the state, in the case of a state bond election, or on the assessment roll of the municipality in the case of a municipal bond election, he shall be furnished by such officers a ballot printed on colored paper and the ballots of all such persons shall be deposited in ballot box 'B.' *Before any person shall be permitted to vote a ballot printed on colored paper he shall be required to make before the officers of election, who are hereby authorized to take the same, an affidavit showing that he is the owner of or the spouse of the owner of real or personal property assessed on the assessment rolls in the state or municipality as the case may be.*" (Emphasis supplied.)

■ No question is raised herein as to registration of the voters. But it may be noted that the affidavit submitted by a voter who qualifies for a ballot on colored paper must be made before the officers of election. The foregoing statute does not define the term "election officers". But § 22–134, W.S.1957, provides that the election officers shall canvass the votes deposited in the respective boxes. So that apparently at least the term in both sections means the judges and clerks of election. In that event ballots cast pursuant to affidavits made before anyone else would, under the foregoing statute, be excluded. It is contended, however, by appellees that persons otherwise entitled to vote are entitled to vote by absentee ballot in accordance with the provisions of § 22–227, W.S.1957, which reads as follows:

"Any qualified elector of this state, having complied with the laws in regard to registration, who is absent from the county of which he is an elector, or is a patient in a hospital within his county, or is physically unable to appear at the polls in which his voting precinct is situated, on the day holding any general or special election, or primary election for the nomination of candidates for such general election, or any municipal general, special, or primary election may vote at any such election as hereinafter provided."

■■ It is a familiar rule of law that if two statutes covering the same general subject are inconsistent the special provision must prevail. State ex rel. Davis v. Ryan, 118 Fla. 42, 151 So. 416, 158 So. 62; 82 C.J.S. Statutes § 369. In this case it is clear that § 22–133 makes provision for a special situation, namely a situation in which the question of the issuing of bonds is involved. That section makes no provision for absentee voters. Counsel for appellees say in their brief that it may be presumed that if the absentee voting was not to be permitted under the bond election laws of 1931 when § 22–133 was passed, the legislature would have made a provision against it. That such a presumption might be indulged in is doubtful. In 1931 the law relating to absentee voters was in existence. Absentee voting is a privilege and not a

**84**

right. McMaster v. Wilkinson, 145 Neb. 39, 15 N.W.2d 348, 155 A.L.R. 667. "The right to vote by absentee ballot is a special privilege granted by the Legislature which may be exercised only under specified conditions." Ragan v. Burnett, Ky., 306 S.W.2d 281, 283. Hence, it might well be said that if the legislature had intended to permit absentee voting in bond elections, it would have made a specific provision therefor. In any event, it is doubtful, to say the least, as to whether or not absentee ballots may be cast in bond elections, and the legislature of this state should clarify the subject and definitely determine as to whether or not absentee ballots may be cast in such elections. We think that in this case it is not necessary for us to determine the question.

So, assuming that absentee ballots may be cast in bond elections in this state, we shall proceed to consider as to whether or not the absentee voters complied with the provisions of the law relating to absentee ballots. We think we may confine ourselves to the question as to whether or not the so-called affidavits were properly executed as provided by § 22–229, W.S. 1957. That section provides, among other things, that the affidavit shall be in the following form:

"State of Wyoming ... ⎱
"County of ........... ⎰ ss.

"I, ......, do solemnly swear that I am a resident of the ...... precinct, (and if he be a resident of a city or town, add: 'Residing at ...... in the town or city of ......,') County of ...... and State of Wyoming, and entitled to vote in such precinct at the next election; that I expect to be absent from the said county of my residence, or I will be a patient in ...... hospital, or I will be physically unable to appear at the polls in which my voting precinct is situated, on the day of holding such election and that I will have no opportunity to vote in person on that day.

"............

"Subscribed and sworn to before me this ... day of ......, 19 ...; and I

hereby certify that the affiant exhibited to me the enclosed ballot or ballots, for inspection before marking, and that the same was (or were) then unmarked, and that he then, in my presence, and in the presence of no other person, and in such manner that I could not see his vote, marked said ballot (or ballots) and enclosed and sealed the same in this envelope. That the affiant was not solicited or advised by me to vote for or against any candidate or measure. That all of said statements contained herein are true to the best knowledge and belief of affiant.

"............
"............"

■ ■ An affidavit implies that the person making the affidavit has taken an oath. 2 C.J.S. Affidavits § 1b(3), p. 925. In the case at bar, the absentee voters merely signed a form of affidavit. They took no oath. No oath was administered to them. The paper signed by them was not attested by the city clerk. No jurat was attached. It would be a dangerous precedent to say that a city clerk may deliver a ballot promiscuously to any person calling for one and permit it to be cast without such person taking an oath. Section 22–240, W.S.1957, provides that:

"If any person shall wilfully swear falsely to any affidavit in this act provided for, he shall, upon conviction thereof, be deemed guilty of perjury * * *."

It goes without saying that in the case at bar none of the absentee voters could be prosecuted under the provisions of this section.

In the case of Bullington v. Grabow, 88 Colo. 561, 298 P. 1059, 1061, where a section similar to § 22–229 of our statutes was construed, the court said:

"Counsel for Mrs. Grabow urge that the provisions of section 3 are directory. The legislature undoubtedly intended that the voter be held to a strict performance of the provisions of section 3—the word 'shall' is used through-

out. A strict construction thereof is necessary to safeguard the exercise of the elective franchise. In re Baker, 126 Misc. 49, 213 N.Y.S. 524, at page 528, it is stated: 'This absentee vote statute is in derogation of the general Election Law and should be strictly construed. Its provisions should be rigidly adhered to; otherwise the repeater, floater, and nonresident are given a free hand to gain results satisfactory to themselves. There are no presumptions or inferences in its favor. The voter, wishing to cast an absentee vote, must comply with all the statutory demands, and the power of the board of elections is held within those lines.' "

In the case of Brown v. State ex rel. Stack, 227 Ind. 183, 84 N.E.2d 883, 886, the court said:

"The trial court found that two absent voters' ballots in the 14th precinct, which were the only absent voters' ballots cast therein, should both be counted. The evidence discloses that one of these ballots was contained in an envelope which was signed by the voter, but unverified, and failed to have the certificate of the proper officer as required by § 29–4908, Burns' 1933, Supplement. This clearly violated a mandatory provision of the statute and this vote for the relator Stack should not have been counted. See Torkelson v. Byrne, 1937, 68 N.D. 13, 276 N.W. 134, 113 A.L.R. 1213; 29 C.J.S., Elections, § 210, pages 301, 302."

In the case of Wichelmann v. City of Glencoe, 200 Minn. 62, 273 N.W. 638, 640, the court stated as follows:

"The Absent Voters Law imposes upon the voter as a condition precedent to the right of voting, the making and filing of the verified application for a ballot. This provision of the statute is mandatory. * * *"

Some ten cases are cited by the court. In the case of Haggard v. Misko, 164 Neb. 778, 83 N.W.2d 483, 486, the general rule is stated:

"The right of absentee and disabled voters to cast their ballots at an election is purely statutory. A statute conferring such a right will be strictly construed and its provisions are mandatory as to a voter desiring to exercise such right. McMaster v. Wilkinson, 145 Neb. 39, 15 N.W.2d 348, 155 A.L.R. 667; Miller v. Mersch, 152 Neb. 746, 42 N.W.2d 652."

That is the general and universal rule. Numerous cases to that effect are cited in McMaster v. Wilkinson, 145 Neb. 39, 15 N.W.2d 348, 155 A.L.R. 667. It is idle for counsel for appellees to say that in face of these decisions the absentee voter did all that he was required to do. He had no right to vote until he took an oath and signed the affidavit. It was his duty to see that the affidavit was duly attested. Ballots cannot be mailed or delivered until that is done. Section 22–230, W.S.1957. It is clear, accordingly, under the unanimous holding of the courts, that the absentee ballots cast in the election in question here were cast illegally, and the trial court was in error in holding the contrary.

Inasmuch as we do not know whether any or all of the twenty-three illegal ballots above mentioned were cast for or against the issuing of the bonds in question here, the case must necessarily be reversed so that that question may be determined, either by the testimony of the voters who cast illegal ballots or by other evidence, if any such can be obtained. Counsel for appellees apparently seem to contend that the illegal votes herein should be apportioned as mentioned in the case of Hamilton v. Marshall, 41 Wyo. 157, 282 P. 1058, 66 A.L.R. 1154, but the rule of apportionment applies only if no evidence as as to how the votes were cast may be obtained.

Appellees say that the persons voting the absentee ballots cannot be compelled to testify and that they were in fact legal voters. We are not persuaded that when they have failed to execute the affidavit required by statute they cast a legal ballot.

In Oliphint v. Christy, 157 Tex. 1, 299 S.W. 2d 933, 939, the court said: "Therefore, the person voting illegally cannot claim the privilege of the legal voter." It is, of course, clear that the persons casting absentee ballots voted illegally. In the case of McRobbie v. Registrars of Voters of Ipswich, 322 Mass. 530, 78 N.E.2d 498, 500, it is stated:

> " * * * We have been referred to no case in this Commonwealth, and have found none, which deals with the right or duty of voters to testify for whom they voted. But in other jurisdictions the great weight of authority supports the following propositions. A voter has a privilege not to testify for whom he voted, but may waive that privilege. A voter casting an illegal ballot has no such privilege. * * *"

See further Bentley v. Wright, 303 Ky. 618, 197 S.W.2d 420; Wehrung v. Ideal School District No. 10, N.D., 78 N.W.2d 68; 29 C.J.S. Elections § 281. In any event there is no reason why we should anticipate that any of the persons who voted in the election here in question should or would refuse to testify as to how they voted. The situation in a bond election is quite different from an election in which candidates for office are involved. In the latter case a voter might hesitate to testify as to the person for whom he voted, but there would be no reason for such hesitation in a bond election.

It does not necessarily follow that all of the illegal voters should be required to testify as to how they voted. That may not be necessary. The following tabulation will show that to be true:

| If all in favor: | | 471 | 452 |
|---|---|---|---|
| | Less | 23 | 0 |
| | | 448 | 452 |

Result: Bonds would be defeated.

| If 2 against: | | 471 | 452 |
|---|---|---|---|
| | Less | 21 | 2 |
| | | 450 | 450 |

Result: Bonds would be defeated.

| If 3 against: | | 471 | 452 |
|---|---|---|---|
| | Less | 20 | 3 |
| | | 451 | 449 |

Result: Bonds would be carried.

| If 4 against: | | 471 | 452 |
|---|---|---|---|
| | Less | 19 | 4 |
| | | 452 | 448 |

Result: Bonds would be carried.

Be that as it may, the controlling points in this case are twofold. The first point is whether there were illegal votes cast. The stipulated facts show there were twenty-three such illegal votes included in the total of 923 votes counted.

Having so determined the first point, we must resolve the second point, which is, how did those twenty-three illegal votes affect the election result? Unfortunately the stipulated facts do not touch directly upon this question, hence the court was not in a position to render the summary judgment it did. In consequence the judgment is reversed and the cause remanded for further proceeding to determine, if possible, what if any effect the counting of the twenty-three illegal votes had upon the outcome of the bond election. In that proceeding it should, of course, be kept in mind that the burden of proof remains with the appellant to show any change in the result of the election. 29 C.J.S. Elections § 274, p. 394.

The judgment of the trial court is, accordingly, reversed and the case remanded to the District Court of Johnson County, Wyoming, for trial in accordance with the views herein expressed.

Reversed and remanded.

### Addendum

Mr. Chief Justice BLUME makes the following addition to his opinion of December 22, 1959:

According to a letter from counsel for defendants-appellees, they desire a clarification of our opinion in the foregoing case regarding the oath to be taken by an absentee voter in a bond election. We

held that an absentee voter must comply with the provisions of § 22–229, W.S.1957. The cases which we cited in the opinion are so unequivocal that there can be hardly any doubt in connection with that matter. It is sine qua non as far as absentee voters are concerned. The record before us did not show compliance with the provisions of the foregoing section. That section relates to the oath which states the reasons why a voter cannot be present at the election and provides for a jurat to be appended thereto. Counsel for defendants-appellees say that this matter was not in controversy but we cannot say that this is true so far as the record before us is concerned. The agreed statement of facts says, "In each instance the affidavit form bears the signature of the elector offering to vote *as an absentee voter.*" (Emphasis supplied.) That clearly points to the fact that the form of affidavit mentioned refers to the form of affidavit required by § 22–229. There is nothing in the agreed statement of facts to show the contrary. If we were misled, then counsel in the case misled us.

But even assuming that the affidavit under § 22–229 was not in controversy and that the agreed statement of facts refers to the oath to be taken under § 22–133, W.S.1957, that does not change the situation in any way for the reason that § 22–133 provides for an affidavit by the property owner and no such affidavit as that was made, as was pointed out in the original opinion. All that was signed was a form of an affidavit. It does not appear in the record before us that it was sworn to or that an oath was administered. Certainly it does not appear that any oath was taken before the election officials. It would seem that if the absentee ballot law of this state applies to bond elections at all, an absentee voter should not alone take the oath provided in § 22–229 but also at least the substance of the oath provided in § 22–133. There is no provision on that subject insofar as bond elections are concerned and that, among other things, makes it doubtful that the legislature intended that absentee voters should be permitted to vote in bond elections in this state. So, as we indicated in our opinion, the legislature should clarify the subject and definitely determine as to whether or not absentee voters should be permitted to vote in bond elections and make adequate provisions in that connection.

The other justices concur.