ROBERT L. ARMSTRONG, RELATOR, v. JOHN WHITEHEAD.

Submitted December 5, 1901—Decided February 24, 1902.

1. Under the revised Borough act (*Pamph. L.* 1897, *p.* 285, §§ 4, 8), providing that the councilmen shall hold office for the term of three years and until their successors shall have qualified by filing an official oath, where it happens that the terms of two councilmen expire simultaneously, and two new members have been elected to fill these vacancies, the filing of the official oath by *one* of the new councilmen terminates the office of *both* the old members; neither of the latter being in a position to say that it is his successor who has not qualified. The doctrine of *Kilburn* v. *Conlan,* 27 *Vroom* 349, applies.

2. Under the revised Borough act (*Pamph. L.* 1897, *p.* 285, §§ 3, 23, 26), the appointment of one to the office of common councilman to fill a vacancy requires not only a nomination by the

mayor, but the affirmative vote of a majority of the whole council, the mayor having no vote thereon except to give a casting vote in case of a tie.

3. One who is acting as a councilman *de facto* and not *de jure*, cannot, by his own vote upon his own appointment, confer upon himself a *de jure* title to the appointive office.

On information in the nature of a *quo warranto*. On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON, COLLINS and PITNEY.

For the relator, *Alan H. Strong.*

For the defendant, *Allan L. McDermott.*

The opinion of the court was delivered by

PITNEY, J.   The controversy in this case relates to the title of the defendant to the office of councilman of the borough of South River, in the county of Middlesex.   A verdict was directed against the defendant.   The essential facts are not in dispute, and the only reasons relied upon to support the insistment that a new trial should be granted relate to the legal propriety of that direction.

The borough was incorporated by act approved February 28th, 1898 (*Pamph. L., p.* 35), and is governed by the general act relating to boroughs.   *Pamph. L.* 1897, *p.* 285. Prior to March 12th, 1901, the council of the borough was composed of Mayor Church and Councilmen Fee, Eulner, Serviss, Mark, Rogers and the defendant, Whitehead.   Church was elected mayor in 1899, to serve for two years, and until his successor should have qualified.   Mark was elected councilman at the same time, to serve for three years, and until his successor should have qualified, so that the term of Mark would not expire until 1902.   Eulner and Whitehead were elected councilmen in 1898, to hold office for three years, and until their successors should qualify.   The terms of Fee, Serviss and Rogers extended beyond the year 1901.

March 12th, 1901, was the date fixed by section 5 of the General Borough act for holding the annual election, and an election was held accordingly to fill the offices of Mayor Church and Councilmen Eulner and Whitehead, whose terms were about to expire. At that election Mark (whose term in the council would not expire until 1902) was elected to the office of mayor, and candidates Manahan and Brown were elected to succeed Councilmen Eulner and Whitehead.

Whitehead's present title to the office of councilman is rested upon his alleged appointment by the new council to fill the vacancy caused by the election of Councilman Mark to the office of mayor and his acceptance of that office.

The following provisions of the General Borough act are pertinent to the inquiry, and may, with convenience, be here recited: By section 2 the elective officers of every borough shall be a mayor, six councilmen and other officers, to be elected by the people. By section 3 it is provided that, in addition to the officers to be elected, there may be appointed certain officers mentioned in that section, and it is provided that the mayor shall nominate, and with the advice and consent of the council shall appoint, all officers in this act directed to be appointed, including the filling of vacancies in elective offices. By section 4 it is provided that vacancies occurring in the offices of mayor or councilmen, among others, shall be filled by appointment until the next annual election, and until the election and qualification of a successor; and that the term of office of all elective officers shall begin on the Monday next after their election. By section 5 the annual election for borough officers is to be held at the same time as the general township election. By section 8 all officers shall, within ten days after their election or appointment, and before entering upon the discharge of the duties of their office, take and subscribe an oath or affirmation faithfully and impartially to discharge the duties of their respective offices; shall file such oath or affirmation with the clerk of said borough, and, upon failure so to do, the said office shall be deemed to be vacant. By section 23 the mayor and councilmen shall constitute the council, and shall meet on the first

Monday after each annual election (which meeting shall be denominated the annual meeting), and thereafter at such time and place as they may, by resolution, direct, or to which their meetings may be adjourned; three councilmen and the mayor shall constitute a quorum for the transaction of business, but a smaller number may meet and adjourn from time to time; all meetings shall be presided over by the mayor except as herein otherwise provided, but he shall not vote except to give the casting vote in case of a tie; in the absence of the mayor, four councilmen shall constitute a quorum. By section 26 all ordinances shall be submitted in writing at a regular meeting of the council and passed at a subsequent regular meeting; provided, however, that no ordinance shall be finally passed, no officer appointed or removed, or salary fixed, except by the vote of a majority of the whole council.

The Monday next after the borough election of 1901 fell on the 18th of March. A meeting of the old mayor and councilmen was held on that day, at which all were present, viz., Mayor Church and Councilmen Eulner, Whitehead, Fee, Serviss, Mark and Rogers. The borough clerk at that time was William Morgan, who was present at the meeting, recording its proceedings and performing his other duties. When this meeting commenced Mark had not qualified as mayor, nor had Manahan or Brown qualified as councilmen. Mark therefore held over as councilman and took part in the meeting as such. Eulner and Whitehead likewise participated in the meeting as councilmen. During the meeting Brown appeared and filed with the borough clerk his oath of office, taken in due form under section 8 of the Borough act. He did not, however, take his seat, nor participate in any way in this meeting. Eulner and Whitehead, the holdover councilmen, continued to participate until its close. At or shortly before its close Mark publicly announced that at the conclusion of that meeting he would call to order the regular annual meeting of the borough council, under section 23 of the act. Either before or after this announcement the meeting presided over by Mayor Church adjourned to the 22d of March. The defendant challenges the legal validity of this adjournment,

and, for the purposes of the present discussion, it will be treated as a nullity, and as not interfering in any way with the efficacy of the proceedings subsequently conducted under the presidency of Mark on the 18th.

Immediately upon the adjournment of the meeting presided over by Mayor Church, he, together with Councilmen Fee, Rogers and Eulner, left the council chamber. Just prior to their departure Mayor-elect Mark handed to the secretary (Morgan) his oath of office as mayor, and at the same time requested Morgan to remain (presumably to act as clerk of the meeting about to be organized by Mark), but Morgan departed.

Mark, as mayor, thereupon called the annual meeting to order, and, in the absence of Morgan as clerk, one Anderson was named as acting clerk by the mayor without objection. The roll-call showed the presence of the newly-elected Councilman Brown and of Councilman Serviss, and also of Whitehead, who assumed to act as a holdover councilman. Mark appears to have responded to the roll-call as a councilman, although he had already filed his oath as mayor and had organized the new meeting in that capacity. Manahan was not present, not having as yet qualified.

After the roll-call the first proceeding was the presentation of a written communication from Mark tendering his resignation as councilman, "the same to take effect only when my successor has been appointed and has qualified." This was ordered "received and placed on file." Next came another communication from Mark, reading as follows:

"I, Joseph Mark, mayor of the borough of South River, in recognition of the resignation of Councilman Mark, just filed with the clerk, do hereby nominate John Whitehead as councilman of the borough of South River in place of said Councilman Mark, he to serve until the next election.

"(Signed)          JOSEPH MARK,<br>"<i>Mayor.</i>"

Upon a motion to confirm this nomination a roll-call was ordered, with the following result: Yeas, Messrs, Serviss,

Brown, Mark and Whitehead; absent, Councilmen Fee and
Rogers. Whitehead was thereupon declared councilman to
take the place of Councilman Mark, in accordance with Coun-
cilman Mark's resignation. The minutes set forth that Coun-
cilman Whitehead thereupon retired as a holdover councilman
and, at the direction of the mayor, took his oath of office as
councilman to fill the vacancy, in compliance with Council-
man Mark's resignation, and filed the same with the acting
clerk.

It is very properly conceded by defendant's counsel that
when Mark qualified as mayor his seat as councilman became
vacant. His "resignation" therefore was of no consequence,
and for all purposes of this meeting he is to be treated as
mayor.

Upon this state of facts the defendant, Whitehead, claims
the right to act as one of the councilmen of the borough of
South River until the next ensuing annual election, by virtue
of his appointment and confirmation to fill the office made
vacant by the election and qualification of Mark as mayor.

His title therefore depends upon the validity of the pro-
ceedings of March 18th in that behalf.

It is quite plain that Whitehead has not now, and had not
at the time of the meeting presided over by Mark, any right
to retain the office as holding over after the expiration of his
own term, which expired on midnight of March 17th. Prior
to the commencement of the meeting in question Brown, one
of the newly-elected councilmen, had duly qualified, and he
was present from the beginning of the meeting. This left
but a single vacancy of the newly-elected councilmen, to wit,
that of Manahan. There were two members entitled to hold
over, to wit, Eulner and Whitehead, either of whom had an
equal claim to fill the vacancy in the board which existed
pending the qualification of Manahan. Whitehead had no
right to claim that Manahan, any more than Brown (who
had qualified), was his successor. Under the rule laid down
in *Kilburn* v. *Conlan*, *27 Vroom* 349, the terms of office of
both Eulner and Whitehead expired with the qualification of
Brown.

. Nor can Whitehead's claim to the office by virtue of the appointment to fill Mark's place be sustained, and this because of the legal infirmity of his appointment and confirmation. Section 3 of the Borough act provides that the mayor shall nominate and, with the advice and consent of the council, shall appoint a person to fill such a vacancy. Section 26 provides that no officer shall be appointed or removed except by the vote of a majority of the whole council. Section 23 provides that the mayor and councilmen shall constitute the council, and that all meetings shall be presided over by the mayor, but he shall not vote except to give the casting vote in case of a tie.

It is insisted by the defendant that, at the meeting in question, the presence of Whitehead as a member *de facto* was sufficient to constitute, with the two other councilmen and the mayor, a quorum for the transaction of business, and that such a quorum was sufficient to consent to the nomination of the mayor, under section 3. This is on the supposition that Whitehead held over *de facto* in Manahan's place; and it being admitted that there were two duly-qualified councilmen absent, Messrs. Fee and Rogers, it follows that, including the mayor, the council at the time was composed of six, with but one vacancy.

But this court has already decided, in the case of *Hawkins* v. *Cook*, 33 *Vroom* 84, that the provisions of sections 23 and 26 of the Borough act apply to the appointment and confirmation of the appointive borough officers; so that such officers must not only be nominated by the mayor, but the appointment must be concurred in by a vote of the majority of the whole council—that is, by the votes of four councilmen, or, in case of a tie vote, then by the votes of three, together with the casting vote of the mayor. A similar view of sections 3 and 26 was intimated in the case of *Fryer* v. *Norton, ante* p. 23. This construction is not opposed by the decision in *Outwater* v. *Carlstadt*, 37 *Vroom* 510, for there the resolution under review was adopted by the casting vote of the mayor, after a tie vote of three councilmen against three.

In this view of the act it is obvious that, in order to fill

an appointive office, as large a vote is requisite when the mayor and five councilmen compose, for the time, the whole council, as when a mayor and six councilmen are in office. Therefore the title of Whitehead by appointment fails for want of a sufficient number of approving votes in the council, even if, as a *de facto* councilman, he had the capacity to vote upon his own appointment.

But the notion that Whitehead, while acting as a holdover councilman *de facto,* and not *de jure,* could, by his own vote in that capacity, confer upon himself a title to an appointive office for which his vote was essential, finds no countenance in the law. A *de facto* officer cannot build up rights for himself based upon his occupancy of an office to which he holds no just title. Mr. Throop, in his treatise on *Public Officers,* § 649, states the general rule as follows: "The exercise of a power by an officer *de facto,* either judicial or ministerial, which lawfully pertained to the office of which he had possession, is valid and binding, where it is for the interest of the public, or of any individual, except the officer himself, to sustain the officer's act; *but where the officer himself founds a right upon such exercise, either personally or officially, it is not valid in his favor."*

The second branch of this rule is as well recognized in the decisions of the courts of this state as the first. And where *de facto* officers are permitted to confer a *de jure* title to office, it is for the benefit of third persons innocently relying upon their acts, and not for the benefit of an intruder acting in his own interest and with full notice of the facts constituting the defect in his own title. *Kilburn* v. *Conlan,* 27 *Vroom* 349; *Dugan* v. *Farrier,* 18 *Id.* 383, 386; *Jersey City* v. *Erwin,* 30 *Id.* 282; *S. C. on error,* 31 *Id.* 141; *Brinkerhoff* v. *Jersey City,* 35 *Id.* 225, 229; *Blore* v. *Freeholders, Id.* 262.

It follows that so far as the action taken upon the appointment of Whitehead is concerned, the meeting of the council lacked the presence of a quorum qualified to act therein.

The rule to show cause should be discharged.