AUGUST WINTERS, RELATOR, v. NICHOLAS E. WARMOLTS, RESPONDENT.

Submitted August 8, 1903—Decided October 28, 1903.

1. By the charter of the city of Paterson (*Pamph. L.* 1871, *p.* 808, §§ 3, 21), one alderman is to be elected each year in each ward, to hold office for two years, and the board is to be divided into two classes, according to the dates of expiration of office of the several aldermen. *Held,* that this method of classification applies to aldermen representing new wards, established pursuant to the general act (*Pamph. L.* 1895, *p.* 311), as well as to those representing wards that existed at the date of the charter.

2. Where two aldermen were to be elected in a certain ward, one for a short term and the other for a full term, certificates of nomination filed pursuant to the General Election law (*Pamph. L.* 1898, *p.* 258, § 42) set forth that one candidate was nominated for the "short term" and another for the "long term," but no such dis-

tinction was made upon the ballot. *Held*, that it was competent to refer to the certificates of nomination to determine which candidate was entitled to the full term.

3. The city clerk, in publishing notice of an election, omitted to mention one of the offices that were to be filled, but the case showed that notwithstanding this omission there was a full and fair election. *Held*, that its results could not be ignored by reason of the defect in the notice.

4. An officer holding *de facto* and not *de jure*, cannot by his own vote upon the question of his title to office confer upon himself a *de jure* title.

On information in the nature of a *quo warranto*.

Before GUMMERE, CHIEF JUSTICE, and Justices DIXON, HENDRICKSON and PITNEY.

For the relator, *William B. Gourley.*

For the respondent, *James G. Blauvelt.*

PER CURIAM.

The pleadings are informal but are evidently designed to present an issue of law for our determination. The relator seeks to oust the respondent from the office of alderman of the third ward of the city of Paterson, the relator claiming title to the same office. Taking all the pleadings together, they show that the material facts are admitted, and that each party thereupon prays for judgment. In order to deal with the meritorious question that has been argued, we will treat the pleadings as if amended in form, so as to present a technical demurrer and issue thereon.

By the charter of Paterson (*Pamph. L.* 1871, *p.* 808, §§ 3, 21) one alderman is to be elected each year in each ward, to hold office for two years, and the board is divided into two classes, according to the dates of expiration of office of the several aldermen. In our opinion, this method of classification applies to aldermen representing new wards as well as to those representing wards that existed at the date of the charter. The purpose is that the terms of office of one-half of the aldermen of the city shall expire each year.

By a general act of 1895 (*Pamph. L., p.* 311) the board of aldermen was authorized to change the boundaries of the wards and increase the number of wards. Steps to that effect were taken in Paterson prior to the annual election of 1901. The old third ward had two aldermen, viz., Roegiers, whose term of office would expire December 31st, 1901, and Close, whose term would expire a year later. Close lived in that part of the old third ward that was not embraced in the boundaries of the new third ward, while Roegiers lived within the new third ward. All parties treated the term of office of Close as ended by the change of ward lines, notwithstanding section 2 of the act of 1895, which provides that all officers elected for existing wards or aldermanic districts in any city where the ward lines are changed and new wards created, shall continue in office until their respective terms of office shall have expired.

On the theory that there were two vacancies to be filled, Roegiers and the present relator, Winters, were elected as aldermen in the new third ward at the fall election of 1901. Winters now claims that he was then elected for two years. In the certificates of nomination it was set forth that Winters was nominated for the "short term" and Roegiers was nominated for the "long term," but in the preparation of the ballots no such distinction was made. Winters and Roegiers both took office in the following January and served together during the year 1902.

We think that under section 10 of the charter it would have been proper to designate upon the ballot which of the two candidates was a candidate for the office vacated by Close and which one was a candidate for the full term. There were two offices to be filled, alike in titular designation, but distinguished by the term for which the incumbent was to serve. The form of ballot used by the electors left the matter in ambiguity. Since, however, the certificate of nomination and the written acceptance thereof by the candidate are made matters of public record by the provisions of the General Election law (*Pamph. L.* 1898, *p.* 258, § 42), we think it is competent to refer to such certificates to solve the ambiguity.

It results that Winters was elected in 1901 to serve only until December 31st, 1902; Roegiers being at the same time elected for a full term of two years.

At the election held in November, 1902, Winters and Warmolts were rival candidates for alderman in the third ward and the latter received the majority of votes. Notwithstanding that the city clerk omitted to mention this office among those to be filled at that election in the notices set up by him pursuant to section 7 of the General Election law (*Pamph. L.* 1898, *p.* 239), it is to be inferred from the averments of the pleadings that there was a full and fair election. Its results therefore cannot be ignored by reason of the failure of the clerk to give the statutory notice. It follows that Warmolts was elected for two years, commencing January 1st, 1903.

By section 23 of the charter of Paterson the board of aldermen is empowered to judge of the qualifications of its members. At a meeting held on January 1st, 1903, certain action was taken that is claimed by the relator to amount to a determination that he was duly qualified to sit as alderman during the year 1903 instead of Warmolts. But the pleadings show that in the action thus taken the relator himself participated, and that without his vote the result would have been favorable to the claim of Warmolts. The relator, on January 1st, 1903, was holding over *de facto* and not *de jure*. He could not by his own vote upon the question of his own qualification confer upon himself a *de jure* title. *Armstrong* v. *Whitehead,* 38 *Vroom* 405.

The board of aldermen formally considered the question on February 16th, 1903, and decided in favor of the incumbent. This decision is entitled to be respected unless overthrown on direct attack. The pleadings disclose no ground for such attack beyond the assertion that the board had already considered the question on January 1st and had decided in favor of Winters. As already shown, the action taken on January 1st cannot avail the relator. This leaves the action of February 16th as the first regular decision made by the board, and as it was legally correct in view of the facts it must stand.

Therefore the respondent is entitled to judgment.