STATE *vs.* THOMAS J. FITZSIMMONS.

1. ELECTIONS—OFFENSES—IMPERSONATION OF VOTER.

Impersonation of a voter at a valid municipal election was an offense at the common law. Therefore, if the statute relating to such impersonation applies to general elections only, it would not be ground for quashing the indictment.

2. ELECTIONS—OFFENSES—IMPERSONATION OF VOTER—VALIDITY OF ELECTION.

19 *Del. Laws, c.* 727, § 11, provides that voters otherwise qualified and who shall have registered at the general election next prior to a municipal election are entitled to vote thereat. 21 *Del. Laws, c.* 36, § 19, provides that the registration books shall be kept by the clerk of the peace of the county and open to public inspection. Registration laws do not require registration for municipal elections, and there is no requirement for delivery of such books at any time to the election officers at a municipal election. *Held,* on a motion to quash an indictment for impersonation of a voter at a municipal election, on the ground that no valid election was had, because the clerk had no authority to deliver the books and the officers no means of determining qualifications of voters, that the court would not assume that voters were not qualified, but assume the contrary, in favor of the validity of an election under color of law, and the motion would be refused.

(<em>December</em> 12, 1911.)

PENNEWILL, C. J., and CONRAD and WOOLLEY, J. J., sitting.

*Andrew C. Gray*, Attorney General, for the state.

*Robert G. Harmon* for the defendant.

Court of General Sessions, New Castle County, November Term, 1911.

INDICTMENT, (No. 62, September Term, 1911) impersonation of voter at municipal election.

(For trial of same case, see 3 *Boyce*—and 82 *Atl.* 528.)

Motion to quash indictment.

The grounds upon which the motion was based were as follows:

*First.* Because the law relating to impersonation of voters applies only to general elections.

*Second.* Because there was no valid city election held in Wilmington in the month of June, 1911.

PENNEWILL, C. J., delivering the opinion of the court:

The above named defendant was indicted at the September term of this court, for impersonating one Coleman Hunter, a duly qualified voter, at the municipal election in the City of Wilmington, held on the third day of June of the present year.

A motion was made and argued, at the said September term, that the indictment be quashed on two grounds:

*First.* Because the law relating to impersonation of voters applies only to general elections.

*Second.* Because there was no valid city election held in Wilmington in the month of June, 1911.

[1] Very little emphasis was placed by defendant's counsel on their first point; and the state's contention that even if the offense charged in the indictment is not indictable under the election laws of the state, it was nevertheless an offense at the common law, was not controverted, and could not be. So that, even though the law relating to the impersonation of voters applies to general elections only, which we need not now decide, the impersonation of a voter, or illegal voting, at a valid municipal election, was an offense at the common law, and is, therefore, an indictable offense, under the laws of this state. 2 *Wharton's Criminal Law (9th Ed.)* § 1832.

[2] But, while defendant's counsel did not seem to rely very much upon their first point, they did, apparently rely with great confidence upon their second ground, viz.: That there was no valid election held in Wilmington in the month of June, 1911.

It is contended, generally, by them that there has not been a valid municipal election held in the City of Wilmington since 1897, when the present Constitution of the State went into effect, because since that time there has been no means provided by law whereby the qualification of voters at such elections could be legally determined.

*Section* 11, *Chapter* 727, *Volume* 19, *Laws of Delaware*, provides: "That at all municipal elections every male citizen * * * who being otherwise qualified to vote at all state elections, and who shall have registered at the registration for the general election next prior to the election at which he offers to vote, * * * and no other, shall be entitled to vote."

The registration laws do not provide for registration for municipal elections. The registration books, when not used by the registration or election officers, are required to be safely kept by the clerk of the peace of the county in his office, and open to public inspection at all convenient times as other public records in his office. *Section* 19, *Chapter* 36, *Volume* 21, *Laws of Delaware*.

There is no law that provides for the delivery of such books at any time to the department of elections of the city, or to the election officers, to be used at a municipal election. It is contended that inasmuch as the clerk of the peace, who is made by law the custodian of the books showing who were registered at the registration for the general election next prior to the city election, had no express authority to deliver said books, or certified copies thereof, to the city election officers; said officers could have no means of determining whether those voting at said election were qualified to vote or not, and therefore the election was invalid.

Unquestionably the law means that no one shall vote at a municipal election in the City of Wilmington who did not register at the registration for the next preceding general election. Such registration was one of the tests of his qualification to vote at the city election.

But, does the law mean that there cannot be a legal and valid city election held unless the officers who hold such election, and determine the qualification of the voters, have in their possession the registration books showing who were registered for the next preceding general election? Even if it does, how do we know that such books were not in the possession of such officers? Does it appear to the court that they were not? It is possible that they might have been, although there is no law expressly authorizing such delivery.

But we are not satisfied that the presence of the registration books was essential to the legality of the city election. The essential requirement is that the voters should have been qualified to vote, that is, registered for the preceding general election. It is possible that all persons who voted at the election in question may have been registered and qualified to vote. Certainly we cannot assume they were not, in the absence of proof to the contrary, and upon such assumption declare the election void. We do not think the court has a right to assume anything against the validity of an election which was held, in all respects, under color of law. But we will assume, in the absence of evidence to the contrary, that the election officers did their duty, and correctly determined that those whom they permitted to vote were qualified to vote.

The registration books are made, by the law, public records in the office of the clerk of the peace, and are required to be open to public inspection at all convenient times as other public records in said office. So that, it was not impossible to ascertain from those records who were registered and who were not.

While, as we have said, the law provides that registration for the preceding general election shall be one of the qualifications to vote at a municipal election, it does not provide, and we do not think it means, that the validity of the election shall depend upon the actual presence of the registration books in the hands or possession of the election officers. And even if it did, it is not shown they were not in the possession of such officers at the time the city election was held.

Neither does the law provide that the original registration

books shall be the only evidence to the city election officers of the voter's registration.

Presumably the election officers, from the evidence before them, whatever it was—whether the original books, certified copies thereof, or other evidence satisfactory to them—determined the qualification of the voter.

But the vital question is not whether the officers acted upon the best evidence, or upon competent evidence, but whether those who voted were disqualified to vote because they were not registered. It is not shown, or attempted to be shown, except argumentatively, that they were not registered and qualified to vote. We are clearly of the opinion that such fact must be shown in order to sustain the defendant's second contention, and justify the court in declaring the election in question invalid.

But while we are of the opinion that the said election cannot be declared invalid, on either of the grounds urged by the defendant, we nevertheless think the law respecting municipal elections is in a very unfortunate condition when the question of the invalidity of such an election can be raised and argued with as much force and plausibility as has been done in this case. The legality of an election should not even appear to depend upon the authority or willingness of the clerk of the peace to deliver to the election officers the evidence of the voter's qualification. The ability of election officers to determine that fact should be so clear as to admit of no question, and such appropriate legislation should be enacted as is needful to accomplish the purpose.

The motion to quash the indictment in this case is refused.