EUGENE LAMMOT, Plaintiff Below, Contestant, v. AUGUST F. WALZ, Defendant Below, Contestee.

(*September* 29, 1954.)

TERRY, J., sitting.

*James L. Latchum* (of the firm of Berl, Potter and Anderson) and *Michael A. Poppiti* for the contestant.

*Clair J. Killoran* and *David Snellenburg* (of the firm of Killoran and VanBrunt) and *Robert H. Richards, Jr.* (of the firm of Richards, Layton and Finger) for the contestee.

Superior Court for New Castle County, No. 1218, C. A. 1953. (Consolidated with Nos. 1220-1230 inclusive, C. A. 1953).

TERRY, J.:

This action and eleven others (being Nos. 1220 through 1230 Civil Actions, 1953), all of which have been consolidated in the above action in accordance with Rule 42(a) of this Court, *Del. C. Ann.*, are before me on Writs of *Certiorari* to review the proceedings of the Council of the Mayor and Council of Wilmington (hereinafter referred to as Council) pertaining to election contests growing out of the municipal election of the City of Wilmington held on June 6, 1953. All of the actions below (12)

contested the right of the contestees, who were purportedly elected to certain offices in the City of Wilmington on June 6, 1953 to hold such offices.

The petitions forming the basis of these actions were filed pursuant to Section 27, Chapter 727, Volume 19, *Laws of Delaware*, by the Democratic candidates for the Office of Mayor, President of City Council, Treasurer, Northern Tax Collector and Councilmen from the First, Second, Third, Fourth, Fifth, Seventh, Eighth and Ninth Wards contesting the elections of their adversaries voted for at the Wilmington City Election held on June 6, 1953. The respective petitions were filed on July 3, 1953 within thirty days next after said election as prescribed by Section 27, aforesaid. The petitions are in writing and allegedly set forth with particularity, as indicated therein, the grounds and specifications upon which the elections were contested. The petitions are under oath and accompanied by an affidavit that they were not filed for the purpose of vexation or delay.

Council on July 9, 1953 adopted a resolution setting the petitions down for hearing on July 17, 1953, a date within the prescribed fifteen day period from the time of filing such petitions. On July 16, 1953, the day preceding the scheduled hearing, the contestees filed motions to dismiss the several petitions. The grounds assigned are (1) that the petitions fail to state the grounds and specifications of the contest with sufficient particularity, and (2) it does not appear from the facts alleged that the result of the elections would be changed by correcting the wrongs complained of.

Over objections by contestants, Council proceeded by resolution to require briefs to be filed by all parties relating to the motions to dismiss. Contestants objected to any Council members whose election was contested in taking any part in ruling upon the contestees' motions to dismiss. These objections were overruled.

Briefs were filed by attorneys for all interested parties in accordance with schedule. The contestees' motions to dismiss

were argued orally before Council on September 8, 1953. At the conclusion of the arguments Council adopted a motion to reserve decision upon the contestees' motions. On October 8, 1953 Council passed a resolution dismissing each of the twelve petitions. On December 15, 1953 each contestant filed a *praecipe* for the Writ of *Certiorari* to Council.[1] On December 28, 1953 a stipulation and order was entered in the above case which consolidated all of the election contests in this civil action pursuant to Rule 42(a) of this Court because of the common questions of law involved and in order to avoid unnecessary costs and delay. On January 6, 1954 the contestants filed their exceptions to the record below and the matter is now before me on these exceptions.

The statute involved is as follows:

"Section 27. If any candidate for any of the offices beforementioned shall choose to contest the right of any person claiming to have been elected to such office, such candidate shall, within thirty days next after such election, cause to be presented to the said council of Wilmington, his petition, in writing, setting forth partcularly the grounds and specifications upon which said election is contested, together with an affidavit that such petition is not for the purpose of vexation and delay but that he does verily believe that he has just grounds for contesting such election; and shall also, at the same time, cause to be delivered to the person whose election is contested, a true copy of such petition. Upon the filing of such petition and affidavit the council shall appoint a day, not less than ten nor more than fifteen days from the time of filing such petition and affidavit for hearing and determining the same, giving public notice thereof in two newspapers published in the city of Wilmington, if so many be published at that time, and upon the day appointed for such a hearing the said city council shall sit in the city hall, in the presence of such citizens and others as may choose to be present, shall hear the allegations and proofs of the party, and shall determine

---

[1] *Rash v. Allen*, 1 *Boyce* 444, 76 *A.* 370.

according to the very right of the matter. Evidence shall be confined to the grounds and specifications set forth in the petition. The council shall have power to issue subpoenas, signed by the president of council for the time being, and attested by the clerk, for persons and papers (including all poll lists, tally lists, statements and certificates delivered to the department of elections, clerk of council, mayor of the city, or any of them), to administer oaths and affirmations, to examine witnesses, and to do all other things requisite to arrive at a full and perfect knowledge as to the right of the case. The decision of the council, signed by its officers, shall be published in two newspapers printed in the city of Wilmington, if so many be published at that time, and shall be final and conclusive."

For the purpose of this opinion I shall deal only with the petition filed by Eugene Lammot, the Democratic candidate for the Office of Mayor for the City of Wilmington, contesting the alleged election of his opponent, August F. Walz, the Republican candidate for the Office of Mayor of the City of Wilmington at the Wilmington City Election held on June 6, 1953, who claims to have been duly elected to said office.

## PETITION

"Your petitioner, Eugene Lammot, respectfully represents:

1. That he was the Democratic candidate for office of Mayor of the City of Wilmington at the City election held on June 6, 1953, and that he does hereby contest the right of August F. Walz, Republican candidate, who claims to have been duly elected to said office.

2. That this petition and contest is brought pursuant to the authority contained in Section 27, 19 *Laws of Delaware,* Chapter 727.

3. That the Department of Elections for New Castle County at a public session held on June 8, 1953 canvassed the 'statements of the result of the canvass and estimate of votes' submitted by the inspectors of each of the election districts, as required by

Sections 21, 22 and 25, 19 *Laws of Delaware*, Chapter 727 and thereafter the said Department executed a certificate which proclaimed and declared August F. Walz to have been elected to the office of Mayor of the City of Wilmington at said election.

4. That the aforesaid canvass of said Department of Elections of the inspectors' 'statement of the result of the canvass and estimate of the votes' showed August F. Walz to have received 143 more votes than your petitioner for said office of Mayor.

5. That upon information and belief your petitioner avers that the statements of the results of the canvass and the estimate of votes submitted to the said Department by the inspectors of each of the election districts in the City of Wilmington were and are incorrect because of the following reasons:

(a) ballots were counted which were improperly marked;

(b) ballots were counted which in fact were not marked at all;

(c) ballots were counted which contained distinguishing marks;

(d) defaced and mutilated ballots were counted, contrary to law;

(e) there are variations between the number of voted names on the Poll List, the number of ballots cast and the names in the Books of Registered Voters that are marked voted;

(f) the tally sheets reflect an incorrect tally of the ballots cast;

(g) the computations on the tally sheets are incorrect;

(h) the tally sheets, ballots, books of registered voters, poll lists, and inspectors' statement of results do not correspond as required by law;

(i) more ballots were counted than the number of voters in said districts;

(j) ballots were improperly counted.

6. That upon information and belief, petitioner avers that the following irregularities and/or fraudulent acts took place at said election:

(a) That Christopher S. Glover and Robert A. Groves, members of the Department of Elections for New Castle County, in the First Election District of the First Ward and in numerous other districts, ordered and advised the election officers of such districts, contrary to law, that the said election officers could not and must not require any person who attempts to vote to identify himself other than by giving his name and address and that they must accept the vote of that person without question, even though that person is known by them not to be the person whose name is given, if the voter swears, after being challenged, that he is, in fact, that person.

(b) That in the First District of the First Ward the following voters came to the polling place to vote and were informed that their names had already been voted: Alexander McGill, Leona Hayes, George Phillips, Alfred J. Green and John Moore.

(c) That in the same district an unknown white man, although challenged, voted the name of Theodore Johnson who was entered in the Books of Registered Voters as colored.

(d) That in the same district, a person who first gave his name as Everett Johnson, after being challenged, was permitted to vote as Edward Johnson.

(e) That in the same district a colored woman who claimed to be Irene Dale voted that name although she spelled her last name for the election officers as Dell.

(f) That in the same district a colored man appeared to vote the name of John Pursely but when informed there was no such name registered he left the polling place and returned about 15 minutes later and stated his name in fact was not John Pursely but Pursely McDaniel and although challenged he voted the latter name.

(g) That in the same district a white man voted the name of Charles Fennel, although challenged, and known by at least two of the election officers not to be Charles Fennel of the registered address.

(h) That in the Second District of the Eighth Ward, the following persons, among others, came to the polling place to vote but were informed that their names had already been voted: Samuel Chessler and Andrew Bivell.

(i) That in the Third District of the Ninth Ward, the inspector left the polling place to attend a funeral for a period of approximately one and a half hours.

(j) That in the Second District of the Eighth Ward, the following voters, among others, came to the polling place and were informed their names had already been voted: Eddie Morris, David Murray.

(k) That in the Tenth District of the Eighth Ward, ballots were counted which in fact were not marked for any candidate.

(l) That in the Third District of the Fourth Ward, the name of Howard Smallwood was voted although Howard Smallwood was confined prior to said election and is now confined at the New Castle County Workhouse for a period of years for a felony.

(m) That in the Third District of the Fourth Ward, one Clinton Pyle, although challenged, voted the name of James Cannon.

(n) That in the Second District of the Fourth Ward, James Wise and wife, among others, appeared to vote and were informed that their names had already been voted.

(o) That in the Third District of the First Ward, more than 145 persons tendered their ballots to vote but were informed that their names had already been voted.

(p) That in the Third District of the First Ward at least three persons attempted to vote the name of Joseph Sassone who was the Inspector of said election district.

(q) That in many election districts, the election officers, accepted challenged votes without determining by vote among themselves whether the vote should be accepted when the ground for the challenge was that the person voting was not the registered voter.

(r) That in some election districts the election officers left the polling place at the close of the polls and left unauthorized persons to count and canvass the ballots.

Wherefore, your petitioner respectfully requests that Council

(1) issue subpoenas for the production of all poll lists, tally sheets, inspectors' statements of results, ballots, books of registered voters; and

(2) order a recount of the said ballots cast during said election and a recheck of the tally sheets, books of registered voters, poll lists and inspectors' statements of results to be made by persons appointed from the Democratic and Republican parties; and

(3) order that said inspector's statements of results of the election be amended to conform to the true vote cast in said election as reflected by the recounts; and

(4) to set a date for hearing of witnesses of the allegations made herein, and to issue subpoenas for such witnesses as petitioner will designate as well as other witnesses; and

(5) to adopt rules and regulations for the recount of said ballots and for the recheck of pertinent documents and to determine the various matters which may arise in said recount and recheck; and

(6) to do all other things necessary and requisite to arrive at a perfect knowledge as to the right of the case, including throwing out any ballot box tainted with fraud."

The common question involved in respect to all of the petitions relates to the question as to whether or not the proceedings of Council were contrary to law. Twelve exceptions have been filed by the contestants in respect to each petition. However, these exceptions may be narrowed for the purpose of this opinion to three in number.

Exception No. 1. May Council under Section 27 consider motions to dismiss the contestants' petitions prior to hearing proof offered by the contestants?

Exception No. 2. Are the members of Council whose offices are contested disqualified from judging the election contests?

Exception No. 3. Did Council fail under Section 27 to exercise its statutory duty to do all things necessary to make a just determination, including opening the ballot boxes, conducting a recount, and comparing the numerous allied papers?

■ Council's duties and responsibilities under Section 27, Volume 19, *Laws of Delaware,* Chapter 727, are quasi-judicial in nature, and quite distinct from its normal legislative functions. Council, under Section 27, is a tribunal of limited jurisdiction which must inquire into and hear proof of allegations properly made in petitions of contest. This was made plain by the Supreme Court in *Rash v. Allen,* 1 *Boyce* 444, 76 *A.* 370, 376. In that case Council's function and duties in election cases were stated to be as follows:

"The city charter * * * provides, *inter alia,* that the city council 'shall be judge of the election and returns and qualifications of its members, and of all members of the corporation.' The city council is made a special tribunal, a court of special and limited jurisdiction, and the statute (19 *Laws of Del.* Ch. 727, § 27) authorizes such tribunal, by a special procedure there-

in prescribed, to hear contests of the elections of city officers, including members of the city council. * * *

"A contest of election * * * must, therefore, be conducted by the same special tribunal, and by the same special method of procedure * * *."

The contestant under Exception No. 1 contends that since the allegations in his petition set forth particularly the grounds and specifications upon which said election is contested concerning illegal and fraudulent voting, together with misconduct and mistakes of Election Officers, that Council was under a mandatory duty under the provisions of Section 27 to proceed to hear his proof under the allegations as set forth within fifteen days from the date of the filing of his petition. It is urged that Council had no discretion in this regard whatsoever but was duty bound to hear proofs of the allegations made and determine the contest on its merits. In not so doing it is said that Council acted contrary to law when it dismissed the petition.

The contestee, on the other hand, contends that the petition is defective and that Council's act in dismissing the same was not contrary to law but proper for the reason that no allegation appears therein that the contestee received any benefit whatsoever by reason of any of the wrongs complained of, nor does it appear that the grounds particularly alleged, if proved, would change the result of the election.

The question presented is one of first impression in this State. The contestant cites no authority under a comparable statute from any other jurisdiction in support of his position. His argument denies outright the power of Council to examine the allegations of the petition in order to determine whether the substantive provisions of the statute have been met in respect to the requirement of setting forth particularly the grounds and specifications forming the basis of the election contest. The contestant's position in this respect is untenable, for if the allegations do not meet the substantive provisions of the statute in this respect no jurisdiction would repose in Council to hear and

determine the contest. In other words, Council under the act must (a) have jurisdiction to hear and determine the contest; (b) it must not act in excess of its jurisdiction; and (c) it must not exercise its jurisdiction contrary to law. *Rash v. Allen*, 1 *Boyce* 444, 76 *A*. 370.

■■ The power of Council to entertain and determine election contests springs from the special provisions of Section 27, and must be exercised in the mode and manner prescribed by the Section. Thus, it necessarily follows, if Council cannot hear and determine an election contest except under particular conditions, jurisdiction is withheld unless such conditions exist and consent will not avail to change the provisons of the law. It is axiomatic that any tribunal having the power upon prescribed conditions to hear and determine cases with finality as to the merits has the incidental power to determine its jurisdiction in the light of the pleadings and the substantive conditions or requirements to be met in respect thereto. A motion to dismiss is a proper means to test Council's jurisdiction under the circumstances of the present case. *Stidham v. Brooks*, 1 *Terry* 110, 5 *A*. 2d 522.

Since Council has the power to inquire into the sufficiency of any and all allegations in an election contest petition in order to determine if it has or should exercise its jurisdiction under the law, I now reach the question, What are the substantive requirements relating to the essential allegations under the provisions of Section 27?

Under Paragraph 5 of the petition the contestant seeks a recount of the vote throughout all of the Election Districts, predicated in the main upon inadvertence, ignorance or mistakes of the Election Officers in conducting the election in various Election Districts.

Under Paragraph 6 of the petition the contestant urges that the entire vote of certain Election Districts be rejected because of alleged fraudulent practices committed by the Election Officers in conducting the election in those Election Districts.

If irregularities resulting in illegal voting are relied upon by a contestant under the provisions of Section 27 as a basis for his contest petition in seeking a recount of the votes cast at a municipal election, then it is essential, if the grounds and specifications are to be set forth with particularity, to allege facts which clearly indicate the irregularities or illegal voting complained of, the District or Districts in which either or both occurred, that the votes involved in respect to the wrongs complained of accured to the benefit of the contestee or changed the result of the election, unless the result is necessarily to be inferred from the facts alleged.

If fraud practiced by the Election Officers in rejecting legal votes is relied upon by a contestant under the provisions of Section 27 as a basis for his contest petition in seeking the rejection of an entire District or Districts, then it is essential, if the grounds and specfications are to be set forth with particularity, to allege facts which clearly indicate the fraud complained of or facts from which fraud may be inferred, the District or Districts in which the fraud was practiced, that the fraud complained of accrued to the benefit of the contestee or changed the result of the election, unless the result is necessarily to be inferred from the facts alleged.

The allegations under Paragraph 5 of the petition are wanting in three essential particulars: (1) it is not averred therein in what District or Districts the alleged wrongs complained of were committed; (2) there is no indication of the number of votes involved, and (3) there is no indication whatsoever that the contestee benefited by reason of the wrongs complained of, or that by a correction thereof the result of the election would be changed, nor can such be inferred from the facts alleged.

The contestant contends that his allegations as set forth under the numbered Sub-paragraphs of Paragraph 6 of his petition constitute sufficient averments of fraudulent practices on the part of the Election Officers to sustain his petition under Section 27.

The only objection interposed by the contestee as to the sufficiency of Paragraph 6 in relation to fraud being properly pleaded is directed to Subparagraph "o" thereof. The contestee concedes the sufficiency of the allegations of Subparagraph "o" except for the absence of the names of the registered voters who were denied the right to vote. It is urged that the absence of this particular is fatal.

The substance of Subparagraph "o" is that the Election Officers in the Third District of the First Ward fraudulently denied 145 legal voters the right to cast their ballots at the City Election for the reason that their names already had been voted. The facts alleged under Subparagraph "o" are adequate to justify an inference of fraud on the part of the Election Officers in said Election District. Necessity does not require, in the absence of a statutory requirement, the alleging of the names of the legal voters denied the right to vote.

Concluding as I have that Paragraph 6 is well pleaded in respect to charging the Election Officers involved therein with fraudulent practices at the City Election, I now turn to the type of relief sought by the contestant.

The contestant contends that since the illegal ballots that were cast in the several voting districts as indicated under the Subparagraphs of Paragraph 6 of the petition cannot be identified and separated from the legal ballots cast therein the entire vote of the District involved should be rejected in making the count. This contention is bottomed upon the principle of law that when illegal ballots have been voted in an Election District in such numbers as to affect the result of an election and cannot be identified and separated from the legal ballots cast, justice may require the entire vote of that Election District to be rejected in making the count.

The question before me does not relate to the merits; that is, the proof of the wrongs complained of: rather, it concerns the sufficiency of the pleading. In other words, conceding *arguendo* that the contestant can prove all of his allegations in Para-

graph 6 of his petition, yet does his petition contain the essential allegations required in setting forth the grounds and specifications of his contest, particularly under the provisions of Section 27?

I have previously indicated that the burden is upon a contestant in seeking an election contest to allege that the wrongs complained of accrued to the benefit of the contestee, or that by a correction thereof the result of the election would be changed, or he must allege facts from which such is necessarily inferred.

The contestant in the present case has not expressly alleged that any of the fraudulent practices complained of under Paragraph 6, or that any of the illegal votes flowing therefrom, accrued to the benefit of the contestee, or that by reason of any of the wrongs complained of, conceding *arguendo* that the same could be sustained by proof, would change the result of the election, nor could such be necessarily inferred from the facts alleged.

The sanctity of the ballot should at all times be guarded jealously, and, where charges are properly made which, if sustained by proof, would show the honest will and intent of the electorate to have been thwarted as to the office involved and would change the result of the election, Courts will not hesitate to direct the necessary inquiry to right the wrong, difficult and expensive though it may be.

*In Re Contest of Election of Gollmar*, 316 *Pa.* 560, 175 *A.* 510; *Lehlbach v. Haynes*, 54 *N. J. L.* 77, 23 *A.* 422; *Hamilton v. Marshall*, 41 *Wyo.* 157, 282 *P.* 1058; *Tazwell v. Davis*, 64 *Or.* 325, 130 *P.* 400; *Ex parte Murphy*, 7 *Cow. N. Y.*, 153; 29 *C. J. S.*, Elections, § 268, page 380.

For the reasons indicated the contestant's petition cannot be sustained.

At the June 6th election twelve Councilmen were elected to office. Contests have been filed against eight of the Republican

Councilmen so elected. It is urged by the contestants, under Exception No. 2, that each Councilman whose election is contested is disqualified from sitting and passing upon any of the contests herein, for the reason that he has a personal interest in the outcome thereof. It should be noted in the present cases that each member of Council whose election is now contested refrained from participating in judging the petitions where his own particular election was involved. Where, however, another contestee's election was involved the Councilmen did participate. For instance, the Councilman from the First Ward participated in dismissing all of the contestants' petitions, except the one contesting the validity of his own election.

In determining the question, I commence with the well established rule of law that embodies the presumption that persons elected to office have all of the indicia of office, together with the power and authority appurtenant thereto, until their elections are rebutted, but one who is a party to a contest to determine the validity or outcome of his election cannot sit in judgment and participate in his official capacity in determining the validity or result of such election. *Ratleff v. Tackett*, 209 *Ky.* 588, 273 *S. W.* 441; *Winters v. Warmolts*, 70 *N. J. L.* 615, 56 *A.* 245; *State v. Fitzsimmons*, 2 *Boyce* 541, 82 *A.* 223. There exists, however, an exception to this rule, bottomed upon the theory of necessity, which provides that a Judge or an Officer exercising judicial functions may act in a proceeding where he is disqualified by interest, relationship, or the like, or his jurisdiction is exclusive and there is no legal provision for calling in a substitute, so that his refusal to act would prevent absolutely a determination of the proceedings. *Stafford v. Mingo County Court*, 58 *W. Va.* 88, 51 *S. E.* 2; Annotation, 49 *A. L. R.* 1476. It is evident that in proceedings such as are before me, which must be decided and in which the members of the tribunal provided by law for the trial and determination thereof are in most part interested, the necessity of the case may require that they proceed to judgment therein, and such judgment, when the necessity for such action appears, will be as binding as though the

parties rendering it were not at all interested in the controversy. *Price v. Fitzpatrick,* 85 *W. Va.* 76, 100 *S. E.* 872.

The question now arises, May the four Councilmen whose elections are not contested sit as Council and pass upon the election contests, or is a majority of the Councilmen elected required in order to constitute a valid quorum to properly hear and determine election contests under Section 27? The section is silent as to the number of Councilmen required in order to constitute a quorum to act in election contest cases. Under the procedural aspects of Section 42, *Revised Code of Wilmington, Delaware,* 1942, seven members of Council are required to constitute a quorum for all business. In the absence of a contrary direction I am of the opinion that the same procedural rule should be followed for quorum purposes under Section 27. In the event the quorum rule under Section 42 of the *Code of Wilmington* be said not to apply under Section 27, then the Common Law Rule would apply wherein a majority of all of the elected Councilmen (seven) are required for quorum purposes. *Ross v. Miller,* 115 *N. J. L.* 61, 178 *A.* 771, 39 *A. L. R.* 1476; *Price v. Fitzpatrick,* 85 *W. Va.* 76, 100 *S. E.* 872.

It is my conclusion under the facts and circumstances of the present case that a Councilman whose office is contested should not participate in the particular proceeding contesting his own office. However, necessity would require that he participate in respect to all other petitions, or that a majority of the Councilmen so situated shall so act in order to constitute a legal quorum to determine the validity of the elections presently contested. By reasons of my conclusions under Exceptions Nos. 1 and 2 the question raised under Exception No. 3 becomes moot. See *Lammot v. Brewer, Del. Ch.,* 1953, 97 *A.* 2d 547.

Council acted in accordance with law in dismissing the present petition.

A conference will be held with counsel representing the re-

spective parties, at which time orders will be signed by me in each case herein involved in the light of this opinion.