**Clarence E. SPENCER and Linda A. Spencer, Plaintiffs,**

v.

**SMYRNA BOARD OF EDUCATION and David Morrison, President, P. Brooks Banta, Member, Richard Nelson, Member, Michael McGrath, Member, Stephen Faulkner, Member, and the State Board of Education, Defendants.**

Superior Court of Delaware, Kent County.

Submitted: April 29, 1988.
Decided: April 29, 1988.
Opinion Issued: May 4, 1988.

Barry W. Meekins and Stephen A. Hampton, Dover, for plaintiffs.

Nicholas H. Rodriguez of Schmittinger & Rodriguez, P.A., Dover, for defendants Smyrna Bd. of Educ., David Morrison, president, and P. Brooks Banta, Richard Nelson, Michael McGrath, and Stephen Faulkner, members.

Marcia Rees, Deputy Atty. Gen., of the Dept. of Justice, Wilmington, for defendant the State Bd. of Educ.

OPINION

RIDGELY, Judge.

In this proceeding, plaintiffs request this Court to declare void a special election conducted by the Smyrna Board of Education ("Smyrna Board") on April 12, 1988. In that election, voters were given the opportunity to vote on two issues: (1) for or against the transfer of funds from a capital-improvement account to a current-operating-expenses account; and (2) for or against the levy and collection of additional school taxes. Plaintiffs' amended complaint attacks the validity of the referendum only on the second issue. This amended complaint was filed after the Court permitted a complete inspection of all election records which were impounded by the Court upon the filing of plaintiffs' original complaint on April 22, 1988. The defendants Smyrna Board and its members have moved for summary judgment pursuant to Superior Court Civil Rule 56.

I.

Before addressing the merits of the motion for summary judgment, the jurisdiction of this Court in this declaratory action requires discussion. *See Hampson v. State,* Del.Supr., 233 A.2d 155 (1967). With regard to subject matter jurisdiction, the Declaratory Judgment Act, 10 *Del.C.* §§ 6501–6513, ("Act") does not increase or alter the jurisdiction of any court, nor does the Act alter the jurisdictional relationship between the Superior Court and the Court of Chancery. *Heathergreen Commons Condominium Association v. Paul,* Del. Ch., 503 A.2d 636, 642 (1985). Rather, for the Superior Court to have jurisdiction over this declaratory action, there must be some jurisdictional basis other than the Act. *Id.*

The parties have not referred the Court to any statutory right of review of this election in this Court, and I have found no such avenue within Chapters 1, 10, or 19 of Title 14. However, under the common

law of Delaware, this Court has the power to review quasi-judicial functions of a school board by way of the common law writ of certiorari. *Compare Lammot v. Walz,* Del.Super., 107 A.2d 905 (1954); *Rash v. Allen,* Del.Super., 76 A. 370 (1910).

When the Superior Court acts as a Board of Canvass pursuant to 15 *Del.C.* § 5701, the Court exercises quasi-judicial powers. *State ex rel. Mitchell v. Wolcott,* Del.Supr., 83 A.2d 762 (1951). Similarly, the officers holding the school-tax referendum election under 14 *Del.C.* § 1903 were acting in a quasi-judicial manner in certifying and declaring the result of the election pursuant to 14 *Del.C.* § 1909. This Court, therefore, has the power to review by certiorari the Smyrna Board's certification and declaration of the tax referendum result. 29 C.J. S. *Elections* § 237(5) at 666 (1965). The complaint will, therefore, be deemed a petition for writ of certiorari. *Semick v. Department of Correction,* Del.Supr., 477 A.2d 707 (1984).

On such a petition, this Court's function is limited to a review of the record of the proceedings below to ascertain the regularity thereof, *Shoemaker v. State,* Del.Supr., 375 A.2d 431 (1977), and to a determination whether the quasi-judicial body acted without or in excess of its jurisdiction or without compliance with requirements of the law. *Campbell v. State,* Del.Super., C.A. No. 85A–DE–2, Bifferato, J. (July 18, 1986), [available on WESTLAW, 1986 WL 8178], *aff'd,* Del.Supr., 520 A.2d 669 (1987), *citing* 1 *Wooley on Delaware Practice,* § 894, p. 623. Furthermore, on certiorari, this Court can review only such errors as appear on the face of the record; this Court is not to weigh evidence or try the case on the merits. *Citizens' Hose Company No. 1, Inc. v. In the Matter of a Decision by the State Fire Prevention Commission,* Del.Super., C.A. No. 84A–FE–2, Ridgely, J. (July 9, 1985).

In the context of a local school board tax election:

[M]inor irregularities in the conduct of an election unaccompanied by fraud or unfair dealing, *and not affecting the result,* will not void an election otherwise valid.

*Brennan v. Black,* Del.Supr., 104 A.2d 777, 789 (1954) (citations omitted) (emphasis added). Therefore, in order for the defendants to prevail in their motion for summary judgment, they must demonstrate that there was no illegality or irregularity in the elective process which affected the results of the election.

## II.

Three elementary schools were selected as places where qualified voters could cast their ballots: Smyrna Elementary School, North Elementary School, and Clayton Elementary School. When voters arrived, they were given an oath form which they were to sign before receiving a ballot. The ballot given to the voter contained the following relevant language on the second issue:

ITEM 2: The new tax rate for Current Operating Expense in Kent County will be 57.5¢ per $100 assessed value and in New Castle County will be 34.5¢ per $100 assessed value.

FOR ADDITIONAL TAX ☐
AGAINST ADDITIONAL TAX ☐

After the polling places closed, the election officials tabulated the results. When reviewing the ballots, the officers noted there were several "irregular" ballots. After reviewing the irregular ballots, 60 ballots were deemed void. After these ballots were separated, the officers certified that the votes for the tax increase had won the election by seven votes—1,450–1,443. In their certification, the officers noted the total number of ballots cast as 2,953 (1,450 + 1,443 + 60).

Pursuant to 14 *Del.C.* § 1910, a recount was requested, and, on April 14, 1988, a special public meeting was held. The meeting was called to order at 4:10 p.m. and adjourned at approximately 1:20 a.m. on the following day, with several members of the Smyrna community in attendance. First to be addressed was the procedure implemented by the election officials in tabulating their results. Of particular concern

in this matter was the criteria used in voiding the 60 ballots. Other matters addressed to the election officials and Smyrna Board included voters' concerns about the lack of instructions on the ballot and the possibility of voting at more than one school.

The election officials/Smyrna Board next considered suggestions regarding how to interpret the questionable ballots. The questionable ballots can be divided into two categories: (a) those ballots with both boxes checked or with neither box checked; and (b) those ballots with "yes" and/or "no" written inside the box. A deputy attorney general who was present offered her suggestion for interpreting the questionable ballots with the following ballots being declared invalid:

1. Those ballots containing two blank boxes;

2. Those ballots with a mark in the two boxes;

3. Those ballots for additional tax where the ballot had a "no" written inside the "for additional tax" box;

4. Those ballots against additional tax where the ballot had "yes" in the "against additional tax" box.

This suggestion was considered and rejected by the Smyrna Board by a three-to-two vote.

A second suggestion was presented to the Smyrna Board for interpreting the questionable ballots. The Board was to:

1. Reject ballots without any markings in either box;

2. Reject ballots with marks in each box;

3. Use a strict English interpretation where the ballot was marked "yes" or "no."

It was explained to all present that a "no" appearing in the "for tax increase" box would be counted as a vote against the tax increase. A "no" appearing in the "against tax increase" box would be read as a double negative—as if the voter said, "I am not against the tax increase." Under this interpretation, the double-negative votes were to be counted as votes "for the additional tax."

After considering this suggestion, the Board adopted it by a four-to-one vote. This interpretation was then applied in recounting the ballots. The election officials certified the following result upon recount:

| | |
|---|---:|
| For Tax Increase: | 1,468 |
| Against Tax Increase | 1,450 |
| Void: | 17 |
| TOTAL: | 2,935 |

### III.

In their amended complaint, the plaintiffs have alleged that several illegalities or irregularities which occurred in this election:

1. The notice of the election was not in compliance with the introductory material on the ballot;

2. The wording on the ballot is inherently confusing;

3. Persons seeking to vote were not asked the questions required by 14 *Del.C.* § 1078;

4. 14 *Del.C.* § 1082 was not complied with in that the voters' names were not entered upon the poll list before voters were admitted to vote;

5. Proper precautions were not taken to prohibit a voter from voting more than once;

6. The total certified vote on the first count, 2,953, differs from the total ballots certified on the recount of 2,935.

7. The total of the polling lists of 2,945 does not correspond with 2,953 or 2,935;

8. The interpretive criteria adopted by the Board lacked logic or common sense.

The plaintiffs' first point of contention lacks merit. The ballot specifically meets the requirements of 14 *Del.C.* § 1908. As to the second point of contention, the ballot is not "inherently confusing." The third contention is also without merit. Assuming the questions were not asked, there is nothing in the record showing that, without this failure, the election

results would be different. Furthermore, I note that, even if the questions were not asked, every voter was required to sign an oath—an action which was not required. As to the fourth contention, there are no explicit facts alleged showing that, without this alleged failure to enter the name onto the poll list *before* voting, the results would have been different. As to the fifth contention, I find proper precautions were taken to ensure there would be no duplicate voting. Poll lists were taken, and oaths were required—oaths which contained the voter's signature.

As to the sixth and seventh contentions regarding the poll list totals and the two certified ballot totals, even if the plaintiffs are given the benefit of the doubt—by subtracting eight votes from those in favor of the additional tax on recount, I note that the tax referendum still would have passed. Thus, these seven contentions all are "minor" irregularities or violations not affecting the outcome of the election.

◼ Turning to plaintiffs' argument regarding the interpretive rule applied on the recount, I find it also lacks merit. The record shows that the Board went to great lengths to ascertain the intention of the voter. It was within the Board's discretion to adopt a "strict" interpretation rule. This method was logical and commonsensical, and therefore valid. The adoption of this method was not an abuse of discretion by the Board. I also find that the Board's decision on the interpretive rule is supported by competent evidence. *E.I. DuPont deNemours & Co. v. I.D. Griffith, Inc.,* Del.Supr., 130 A.2d 783 (1957).

## IV.

The Court agrees with defendants that there is an urgent need for a decision by the Court in this case. Counsel for defendants have represented that 88 employees have been terminated and that drastic reductions in school programs have been made due to the uncertainty created by this litigation. As in *Brennan v. Black, supra,* "in deciding this important case, counsel and the Court have been subject to severe pressure of time. This opinion has at-

tempted to deal, as adequately as possible, with the many legal questions presented. Some subsidiary or incidental arguments have not been specifically dealt with, but they have not been overlooked." *Id.* at 797.

This Court is satisfied that plaintiffs' case has no legal merit.

## V.

◼ Finally, the Court concludes that the State Board of Education is not an indispensable party to this proceeding and that it should be dropped as a party to this action pursuant to Superior Court Civil Rule 21.

Accordingly, IT IS ORDERED that:

(1) The State Board of Education is dropped as a party to this action pursuant to Superior Court Civil Rule 21;

(2) Defendants' motion for summary judgment is GRANTED, and the April 13, 1988 certification of the election result by the Smyrna Board of Education is AFFIRMED.